2009 WY 55

**RIVERVIEW HEIGHTS HOMEOWNERS' ASSOCIATION, & Riverview Heights Homeowners, Inc., a Wyoming corporation, Appellants (Plaintiffs),**

v.

**Christopher L. RISLOV, an individual, Wyoming Renovations, Inc., d/b/a FAIRGROUND HOMES, a Wyoming corporation, Appellees (Defendants).**

No. S–08–0126.

Supreme Court of Wyoming.

April 21, 2009.

Representing Appellants: Kelly A. Rudd, Baldwin, Crocker & Rudd, PC, Lander, Wyoming.

Representing Appellees: Pamala M. Brondos and Peter C. Nicolaysen, Nicolaysen & Wilking, PC, Casper, Wyoming. Argument by Mr. Nicolaysen.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1] The Riverview Heights Homeowners' Association filed suit against Christopher Rislov, seeking to enforce an amendment to the subdivision's restrictive covenants. Mr. Rislov contended that the amendment was invalid. The district court granted Mr. Rislov's motion for summary judgment, and the Association appealed. We affirm.

### ISSUE

[¶2] The Association presents one issue: Did the district court err in ruling that the 2004 Amended Covenants are invalid as a matter of law?

### FACTS

[¶3] Riverview Heights is a residential subdivision located northwest of Riverton, Wyoming. In 1977, the developer filed and recorded restrictive covenants for the subdivision. In 1979, the developer again filed and recorded restrictive covenants.[1] The 1979 Covenants are nearly identical to the earlier ones, except for a provision for creating a homeowners' association, under which the Riverview Heights Homeowners' Association was formed. The two sets of restrictive covenants contain a provision, set forth in Paragraph 14 of each document, establishing how the covenants may be amended:

The rights, duties, obligations and restrictions herein created are for the benefit of all of the land in said tract and they are and shall be irrevocable and perpetual until and unless revoked, obligated, modified or amended by instruments executed and acknowledged in the form prescribed for the execution of deeds by seventy-five (75) percent of the owners of the total acreage contained in this tract.

[¶4] In 2004, the Association filed and recorded an "Amendment to Restrictive Covenants on Use of Land in Riverview Heights Subdivision." The 2004 Amendment prohibited manufactured homes in the subdivision,[2] and provided that all construction in the subdivision must be approved by the newly-created architectural control committee. The document was executed by the Association's officers, whose signatures were notarized. The document recited that at least 75% of the subdivision's landowners had approved of the amendment. Attached were thirty-four pages containing signatures of lot owners. Additional details about these signature pages will be reviewed in the discussion section.

[¶5] In 2007, Mr. Rislov purchased Lot 69 in the Riverview Heights Subdivision.[3] He began preparing the lot for a manufactured home. The Association contacted Mr. Rislov to inform him that the 2004 Amendment to the covenants prohibited manufactured homes and required approval of an architectural control committee before development. Mr. Rislov disagreed. Litigation ensued.

---

1. Despite some technical errors in the documents, the parties agree, and the district court ruled, that both the 1977 and the 1979 covenants apply to all of the property in the subdivision.

2. The Association seems to take the position that the 1977 and 1979 covenants were meant to prohibit all types of manufactured homes, and the 2004 Amendment was merely a clarification of that prohibition. However, the case before us deals only with the Association's effort to enforce the 2004 Amendment. The question of whether the 1977 and 1979 covenants prohibit manufactured homes is not before us, and cannot be addressed in this decision.

3. It is unclear if the lot is owned by Mr. Rislov or his company, Wyoming Renovations, Inc., doing business as Fairground Homes. The distinction does not affect our decision.

[¶ 6]   The Association and Mr. Rislov presented their dispute to the district court in cross-motions for summary judgment.  The district court ruled that the amendment was invalid because it had not been executed and acknowledged as required by the 1977 and 1979 Covenants.  It granted summary judgment in favor of Mr. Rislov, and the Association appealed.

### STANDARD OF REVIEW

[¶ 7]   We employ a familiar standard of review when considering a district court's summary judgment decision:

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002). "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Id.* Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.,* 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC,* 2008 WY 101, ¶ 8, 191 P.3d 125, 128–29 (Wyo.2008).  We view the facts from the vantage point most favorable to the party opposing the motion, and give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Brumbaugh v. Mikelson Land Co.,* 2008 WY 66, ¶ 11, 185 P.3d 695, 701 (Wyo.2008).

### DISCUSSION

[¶ 8]   Restrictive covenants are contractual in nature and are interpreted according to principles of contract law.  *Goglio [v. Star Valley Ranch Ass'n,* 2002 WY 94,] ¶ 18, 48 P.3d [1072,] 1079

[(Wyo.2002)].  A court's goal is to determine and effectuate the intention of the parties, especially the grantor or declarant.  *Stevens v. Elk Run Homeowners' Ass'n, Inc.,* 2004 WY 63, ¶ 13, 90 P.3d 1162, 1166 (Wyo. 2004).  We first examine the language of the covenants and give the words their plain and ordinary meaning.  *Seven Lakes Dev. Co., L.L.C. v. Maxson,* 2006 WY 136, ¶ 10, 144 P.3d 1239, 1245 (Wyo.2006).  We consider the whole document and not just one clause or paragraph.  *Stevens,* ¶ 13, 90 P.3d at 1166.

*Omohundro v. Sullivan,* 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo.2009).

[¶ 9]   In determining whether the 2004 Amendment is valid, we must interpret this language from Paragraph 14:

The rights, duties, obligations and restrictions herein created are for the benefit of all of the land in said tract and they are and shall be irrevocable and perpetual until and unless revoked, obligated, modified or amended by instruments executed and acknowledged in the form prescribed for the execution of deeds by seventy-five (75) percent of the owners of the total acreage contained in this tract.

We are mindful of our obligation to consider the documents in their entirety, but we have found no other pertinent or helpful provisions in the 1977 Covenants or the 1979 Covenants.  We therefore narrow our focus to the provision quoted above.

[¶ 10]   It is plain enough that Paragraph 14 requires that any instruments amending the covenants must be "executed and acknowledged in the form prescribed for the execution of deeds."  The parties agree that the prescribed form for the execution of deeds is set forth in Wyo. Stat. Ann. § 34–1–113 (2008), which provides that "Execution of deeds, mortgages or other conveyances of lands, or any interest in lands, shall be acknowledged by the party or parties executing same, before any notarial officer." [4]   The

---

4.  The version of the statute in effect when the 2004 Amendment was filed also allowed for acknowledgement before certain court personnel or a county clerk, in addition to a notary. *See* 2008 Wyo. Sess. Laws ch. 20, § 2. Because the

signatures at issue in this case were either acknowledged by a notary or not acknowledged at all, the change to the statute has no significance here.

parties disagree, however, about whose signatures must be notarized.

[¶ 11] The Association contends that the 2004 Amendment complied with Paragraph 14 because the Association's officers signed the document, and their signatures were notarized. On this basis, the Association contends that the 2004 Amendment is valid as a matter of law, and the district court should have granted the Association's motion for summary judgment. The Association further contends that Paragraph 14 is, at the very least, ambiguous. On this basis, the Association contends that the district court erred in granting summary judgment to Mr. Rislov.

[¶ 12] We are unconvinced by the Association's contentions, because we find them contrary to the plain language of Paragraph 14. In simplified form, the language provides that an amendment requires "instruments executed and acknowledged ... by seventy-five (75) percent of the owners." This language is not ambiguous or subject to alternative interpretations. It requires execution and acknowledgement by the owners. Execution and acknowledgement by the Association's officers do not satisfy this requirement. Like the district court, we find no other provisions in the restrictive covenants authorizing the Association's officers to act on behalf of the owners to amend the covenants.

[¶ 13] Because we do not accept the Association's main contentions, we also reject several of their supporting arguments. For example, they assert that the 2004 Amendment complied with the statutory requirements for execution and acknowledgement, as proven by the fact that the county clerk accepted it for filing. The clerk's filing of the document may suggest that the 2004 Amendment complied with Wyo. Stat. Ann. § 34–1–113. It does not prove that the 2004 Amendment complied with Paragraph 14 of the restrictive covenants.

[¶ 14] As another example, the Association asserts that its officers had inherent authority to impose the 2004 Amendment. They cite several cases from other jurisdictions suggesting that homeowners' associations possess some inherent authorities. However, not one of the cases includes the power to amend restrictive covenants among those inherent authorities. Typical is *Conestoga Pines Homeowners' Ass'n v. Black,* 689 P.2d 1176, 1178 (Colo.App.1984), in which the court recognized a homeowners' association's authority to enforce restrictive covenants, but did not mention any authority to amend those covenants. We are more strongly persuaded by a case from our own jurisdiction, in which we quoted this commentary with approval:

> Homeowners associations serve three primary functions: levying and collecting assessments; managing and maintaining common property for the benefit of residents; and enforcing covenants that govern developments. They derive authority to carry out these functions from several documents, including the declaration of covenants, conditions, and restrictions (CC & Rs), the association's bylaws and articles of incorporation, and the deeds to the property within a development.

*Goglio v. Star Valley Ranch Ass'n,* 2002 WY 94, ¶ 17, 48 P.3d 1072, 1078 (Wyo.2002), quoting Casey J. Little, *Riss v. Angel: Washington Remodels the Framework for Interpreting Restrictive Covenants,* 73 Wash. L.Rev. 433, 437 (1998).

[¶ 15] The covenants under review in *Goglio* allowed the association to levy a special assessment upon an affirmative vote of two-thirds of its members. We observed that, "Implicit in the [covenant] language that requires approval of [two-thirds] of the members of the Association for the imposition of a special assessment *is the proposition that a special assessment cannot be levied without the requisite approval.*" *Goglio,* ¶ 25, 48 P.3d at 1081 (emphasis added). The covenants for Riverview Heights allow amendment to the covenants upon approval of 75% of the lot owners. Implicit is the proposition that the Association's officers, regardless of any inherent powers they might exercise, cannot amend the covenants without the requisite approval of 75% of the lot owners.

[¶ 16] As its next contention, the Association claims that Mr. Rislov is equitably estopped from challenging the validity of the

2004 Amendment. However, the cases cited by the Association do not apply here. The Association relies on *McCarthy v. Union Pacific Ry. Co.*, 58 Wyo. 308, 131 P.2d 326, 332 (1942) for the general proposition that a grantee is estopped by the promises of his grantor where the grantee had notice of the promise. The Association contends that Mr. Rislov's grantor, the former owner of Lot 69, approved of the 2004 Amendment, and that Mr. Rislov had, at a minimum, constructive notice of that fact. However, in *McCarthy* there was no dispute that the grantor's promise was valid. The question was whether that valid promise was binding on the grantee. In the present case, the 2004 Amendment was not approved by a sufficient number of lot owners. It never became binding on Mr. Rislov's grantor, whether or not the grantor approved it or "promised" to abide by it. It does not bind Mr. Rislov, whether or not he had notice of it.

[¶ 17] Similarly, the Association relies on *Bowers Welding and Hotshot, Inc. v. Bromley*, 699 P.2d 299 (Wyo.1985), for the general rule that restrictive covenants with legal deficiencies may still be enforced in equity so long as a grantee has notice of the agreement. In *Bowers Welding*, however, the question was not whether the restrictive covenants were valid, but whether a mistake in the legal description rendered the covenants inapplicable to the particular lot in question. Again, the present case involves the underlying validity of the 2004 Amendment, not its applicability to Mr. Rislov's lot. Applying the cases cited by the Association to the question at issue here, we cannot conclude that Mr. Rislov is estopped in equity from challenging the validity of the 2004 Amendment.

[¶ 18] We turn finally to the Association's contention that the language of Paragraph 14 is ambiguous, in that it can

reasonably be read to allow different ways of counting the owners' votes. It could allow one vote per owner, regardless of how many lots he or she owns. This, apparently, is the interpretation reached by the district court. However, the Association contends that it could also allow one vote per lot, so that an owner of three lots, for example, receives three votes.[5] It is unnecessary to resolve this ambiguity, or even to decide whether an ambiguity exists, because the result is the same either way the votes are counted.

[¶ 19] There are 96 lots in the Riverview Heights Subdivision. The parties seem to agree that, at the time the 2004 Amendment was filed, there were 43 different owners of the 96 lots. Attached to the 2004 Amendment are signature pages purporting to reflect approval of the amendment. Several of the signature pages are not notarized. Signature pages that are not notarized are not properly executed and acknowledged, and we therefore agree with the district court that these signature pages are ineffective as approvals of the 2004 Amendment.

[¶ 20] Subtracting out the ineffective approvals, the remaining approvals represent 19 owners of 61 lots. Without deciding the point, we will treat all of these remaining approvals as valid.[6] The valid approvals represent 19 of the total 43 owners, or 44%. They represent 61 of the total 96 lots, or 64%. Either way the votes are counted, they do not represent approval of the 2004 Amendment "by seventy-five (75) percent of the owners" of the Riverview Heights Subdivision.

### CONCLUSION

[¶ 21] The 2004 Amendment to the restrictive covenants for the Riverview Heights Subdivision is invalid. We affirm the district court's decision granting summary judgment

---

5. It has also been suggested the phrase "total acreage" in Paragraph 14 could lend itself to allowing one vote per acre. We reject that interpretation because the plain language of Paragraph 14 requires approval "by seventy-five (75) percent *of the owners* of the total acreage." (Emphasis added.)

6. Mr. Rislov challenges the validity of the approvals of two additional owners. One of the signature pages includes the signature of only one of the two owners. One owner of several lots submitted an affidavit stating that she had approved of the amendment process, but not of the 2004 Amendment itself. Based on our calculations, however, it makes no difference if we treat these two owners' approvals as valid.

against the Association and in favor of Mr. Rislov.