# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 116

APRIL TERM, A.D. 2014

September 17, 2014

STAR VALLEY RANCH ASSOCIATION,

Appellant
(Defendant),

v.

WILLIAM DALEY, Trustee of the Daley Family
Trust; GERALD KITTELSON and SARA
KITTELSON, Trustees of the Kittelson Revocable
Trust; FRANK GOGLIO, and BOB LOGAN and
KATHY LOGAN, Trustees of the Logan 1998
Revocable Trust,

Appellees
(Plaintiffs).

S-13-0244

*Appeal from the District Court of Lincoln County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
    *James K. Sanderson and Michael D. Allen, Sanderson Law Office, Afton,*
    *Wyoming.  Argument by Mr. Sanderson.*

*Representing Appellees:*
    *Paula A. Fleck and Matthew W. Kim–Miller, Holland & Hart, LLP, Jackson,*
    *Wyoming.  Argument by Mr. Kim-Miller.*

*Before BURKE, C.J., and HILL, KITE*, DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Chief Justice.**

[¶1]   The Star Valley Ranch Association attempted to amend the restrictive covenants governing the Star Valley Ranch subdivision in Lincoln County, Wyoming.  The Appellees, owners of property in the subdivision, filed suit in district court seeking to invalidate the amendments on the basis that the Association had not complied with the previous covenants' requirements for amendments.  The district court granted summary judgment in favor of the Appellees.  The Association appealed the district court's decision.  We will affirm.

## ISSUES

[¶2]   The Association presents these issues:

> 1.      Where more than 70% of the lot owners in the entire subdivision consented to amend the covenants, did the district court err in holding that the amended covenants were invalid as they pertained to Plats 1, 2, and 3 of the Star Valley Ranch Subdivision?
>
> 2.      Did the district court err when it held that no legal impracticability occurred upon the Clerk's refusal to record the signatures of those who consented to the modification of the covenants?
>
> 3.      Where the law of the case held that the original covenants are to be interpreted to apply only to the specific plats that were described in the covenants, did the district court err in holding the Appellees had standing to challenge the amended covenants in plats where they were not lot owners?

[¶3]   The Appellees rephrase the issues:

> 1.      Did the district court properly grant summary judgment in favor of the [Owners] because [the Association] failed to satisfy various requirements to amend and restate eleven separate sets of covenants as a single document?
>
> 2.      Did the district court properly consider the entirety of the attempted global amendment and restatement of eleven sets of covenants and hold that the [Owners] have standing to challenge that amendment process?

1

## FACTS

[¶4]   Leisure Valley, Inc., a Nevada corporation, founded Star Valley Ranch, a subdivision in Lincoln County, Wyoming.  Beginning in 1970, and ending in 1986, Leisure Valley planned and built out twenty-one plats within the boundaries of the subdivision.  The subdivision now includes more than 2,000 lots.

[¶5]   Leisure Valley drafted and recorded sets of covenants for eleven separate phases of the development, eventually covering all twenty-one plats.   The covenants were recorded for the following plats in this chronological order:

> Phase 1.       Plats 1 and 2, August 14, 1970;
> Phase 2.       Plat 20, August 19, 1970;
> Phase 3.       Plat 3, March 29, 1971;
> Phase 4.       Plats 4, 5, and 6, June 25, 1971;
> Phase 5.       Plats 7 and 8, April 3, 1972;
> Phase 6.       Plats 9 and 10, March 23, 1976;
> Phase 7.       Plats 12, 13, and 14, August 15, 1977;
> Phase 8.       Plats 15 and 16, April 2, 1979;
> Phase 9.       Plats 17 and 18, March 7, 1980;
> Phase 10.      Plat 21, March 21, 1983; and
> Phase 11.      Plats 4, 11, and 22, February 20, 1986.

We will analyze specific language from the covenants in our discussion below.  For now, we note generally that the covenants establish various use restrictions, such as a limitation to single family residential development.  The restrictions and definitions are similar, but not identical, in all eleven sets of covenants.  All contain provisions that the covenants may be amended by "a written agreement executed by seventy percent (70%) of the then record Lot Owners covered hereby . . . placed on record in the Office of the County Recorder of Lincoln County."

[¶6]   Beginning in 2010, the Association mounted an effort to amend the eleven sets of covenants into a single, uniform set of covenants applicable to the entire subdivision.  A committee was formed to survey owners in the subdivision about potential changes to the covenants, and to draft a new set of covenants based on that input.  In September of 2010, copies of the proposed amended covenants were sent to all of the lot owners of record, along with a form to be returned signifying whether the lot owners "Approve" or "Do Not Approve" the amended covenants.  The form included a signature line for the owner and lines for two witnesses, but the form did not require that the signatures be acknowledged or notarized.

[¶7]   The Association received forms from 1,476 lot owners of record approving the

2

amendments. In total, that represented 73% of all of the lot owners of record. However, only 60% of the owners in Plats 1 and 2, and only 63% of the owners in Plat 3, voted to approve the amendments.

[¶8] The Association considered that the amendments had been approved because more than 70% of the lot owners of record throughout the entire subdivision had voted to approve. In June of 2011, the Association attempted to file and record a copy of the amended covenants, along with the 1,476 signatures of the lot owners who had approved the amendments, in the county property records. The Lincoln County Clerk refused to record that document. As a substitute, the chairman of the Association's board of directors signed, and had notarized, an affidavit reciting that more than 70% of the lot owners had submitted the required consent to amend the covenants. The Lincoln County Clerk accepted this affidavit, along with the amended covenants, for filing and recordation.

[¶9] The Appellees challenged the validity of the amended covenants by filing suit in district court, seeking a declaration that the amended covenants were invalid, and an injunction prohibiting the Association from implementing and enforcing the amended covenants. In broad terms, the Appellees asserted that the eleven sets of covenants had to be amended separately, and that the Association had improperly aggregated the votes from all eleven sets of owners in order to calculate an approval rate greater than 70%. The Appellees also contended that all eleven sets of covenants required that amendments must be accomplished by "a written agreement executed by seventy percent (70%) of the then record Lot Owners covered hereby . . . placed on record in the Office of the County Recorder of Lincoln County." According to the Appellees, the affidavit signed by the chairman of the Association's board of directors did not constitute a written agreement executed by lot owners of record, and was therefore legally inadequate to effect the amendments to the covenants.

[¶10] The Appellees filed a motion for summary judgment, which the Association opposed. The district court ruled in favor of the Appellees and against the Association. This timely appeal followed.

*STANDARD OF REVIEW*

[¶11] We have said that the "propriety of granting a motion for summary judgment depends upon the correctness of the dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law." *Dwan v. Indian Springs Ranch Homeowners Ass'n*, 2008 WY 74, ¶ 6, 186 P.3d 1199, 1201 (Wyo. 2008) (citing W.R.C.P. 56(c)). Summary judgment involves a purely legal determination, and accordingly, we undertake *de novo* review of the district court's decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2008). "The facts are reviewed from the vantage point most favorable to the party

3

opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record." *Brumbaugh v. Mikelson Land Co.*, 2008 WY 66, ¶ 11, 185 P.3d 695, 701 (Wyo. 2008).

## *DISCUSSION*

[¶12]  Restrictive covenants are contractual in nature, and are interpreted in accordance with the principles of contract law. *Bedessem v. Cunningham*, 2012 WY 36, ¶ 16, 272 P.3d 310, 313 (Wyo. 2012); *Stevens v. Elk Run Homeowners' Ass'n*, 2004 WY 63, ¶ 12, 90 P.3d 1162, 1165-66 (Wyo. 2004).  It is well-established that:

> We seek to determine and effectuate the intention of the parties, especially the grantor(s), as it may appear or be implied from the instrument itself. *See American Holidays, Inc. v. Foxtail Owners Ass'n*, 821 P.2d 577, 579 (Wyo. 1991); *Bowers Welding & Hotshot, Inc. v. Bromley*, 699 P.2d 299, 303 (Wyo. 1985); *Kindler* [*v. Anderson*, 433 P.2d 268,] 270-71 [(Wyo. 1967)].  Intention of the parties is to be determined from the entire context of the instrument, and not from a single clause. *American Holidays*, at 579; *Bowers Welding & Hotshot*, at 303; *Kindler*, at 270-71.  Where the language imposing the restriction(s) is clear and unambiguous, we construe it according to its plain and ordinary meaning without reference to attendant facts and circumstances or extrinsic evidence, and the rule of strict construction does not apply. . . . *American Holidays*, at 579; *Kincheloe v. Milatzo*, 678 P.2d 855, 859 (Wyo. 1984); *Kindler*, at 271.

*Anderson v. Bommer*, 926 P.2d 959, 961-62 (Wyo. 1996).

[¶13]  We begin by examining the language in the eleven sets of covenants.  The language pertaining to amendments is the same in all eleven:

> All of the conditions, covenants and reservations set forth herein shall continue and remain in full force and effect at all times against said property and the Owners thereof, subject to the right of change or modification hereinafter provided until January 1, 1992, and shall as then in force be continued for a period of twenty years, and thereafter for successive periods of twenty years each without limitation, unless within the six months prior to January 1, 1992, or within the six months prior to the expiration of any successive twenty-year period thereafter, a written agreement executed by seventy percent

(70%) of the then record Lot Owners covered hereby be placed on record in the Office of the County Recorder of Lincoln County, by the terms of which agreement any of said conditions or covenants are changed, modified or extinguished, in whole or in part, as to all or any part of the property subject thereto, in the manner and to the extent therein provided. In the event that any such written agreement of change or modification be duly executed and recorded, the original conditions and covenants, as therein modified, shall continue in force for successive periods of twenty years each, unless and until further changed, modified or extinguished in the manner herein provided for, by mutual written agreement of not less than seventy percent (70%) of the then Owners of record title of said property.

[¶14] There is no dispute that amendments to the covenants must receive the approval of "seventy percent (70%) of the then record Lot Owners covered hereby." The Association interprets this language to mean 70% of the property owners in the Star Valley Ranch subdivision as a whole. Because it obtained the approval of 73% of the owners in the aggregate, the Association claims that the covenants were properly amended. The Appellees' interpretation is that the eleven separate sets of covenants created eleven separate and distinct phases, and that the votes of the property owners must be counted separately for each phase. The proposed amendments received only 60% approval in the first phase, covering Plats 1 and 2, and only 63% approval in the third phase, covering Plat 3. Under the Appellees' interpretation, the proposed amendments failed as to Plats 1, 2, and 3.

[¶15] To help with our interpretation of the phrase "seventy percent (70%) of the then record Lot Owners covered hereby," we turn to the definitions contained in the covenants. The covenants for Plats 1, 2, and 3 include the same definitions. There is no definition for the term "record Lot Owners covered hereby," but the term "Owner" is defined as "the record owner, whether one or more persons or entities, of a fee simple title to any Lot, and shall also include contract purchasers and the Declarant, but shall exclude those having such interest merely as security for the performance of any obligation." In turn, the term "Lot" is defined as "any plot of land shown upon any recorded subdivision map of the Property, with the exception of the Common Area." Finally, the term "Property" is defined as "that certain real property hereinbefore described, and such additions thereto as may hereafter be brought within the jurisdiction of the Association." The "Association" refers to the Star Valley Ranch Association.

[¶16] The "certain real property hereinbefore described" is the property described in Exhibit A of each set of covenants. In the first phase, the property so described is Plats 1 and 2, and in the third phase, it is Plat 3. The phrase "that certain real property

5

hereinbefore described" is plain and unambiguous enough, but we must also consider the phrase "and such additions thereto as may hereafter be brought within the jurisdiction of the Association."

[¶17] Although both parties fail to explain their interpretations of this key language in any detail, we can discern their positions from their broader arguments. The Association asserts that "such additions thereto as may hereafter be brought within the jurisdiction of the Association" refers to any and all properties that later come within the jurisdiction of the Association. All eleven sets of covenants provide the Association with power to maintain, administer, and enforce the covenants, and to assess owners for their share of costs relating to recreational facilities and common areas. According to the Association, each successive phase brought its Plat or Plats within the jurisdiction of the Association, and so all twenty-one Plats have become additions falling within the definition of the term "Property." Under the Association's interpretation, all of the Plats have been "additions" to a single entity.

[¶18] The Appellees offer a different interpretation. On the same page as the definition of property, which includes "such additions thereto as may hereafter be brought within the jurisdiction of the Association," is a section entitled "Annexation of Additional Properties." It provides that "Additional properties in Lincoln County, Wyoming may be annexed hereto by the Developer, LEISURE VALLEY, INC., or its successors, and said properties may be annexed to said property without the assent of Class A. members." Annexation, according to the Appellees, is how additional property is brought within the jurisdiction of the Association. It is undisputed that neither the Association nor the Developer ever made use of the annexation provision. On that basis, the Appellees assert that each of the eleven different sets of covenants remain applicable only to the plats described in its version of Exhibit A.

[¶19] The district court accepted the Appellees' interpretation, concluding that "the manner by which the Covenants governing Plats 1 and 2 may be changed . . . is clear and unambiguous." The amendments had to be approved by at least 70% of the owners of lots in Plats 1 and 2. Similarly, the district court also concluded that amendments had to be approved by at least 70% of the owners of lots in Plat 3. For several reasons, we agree with the district court.

[¶20] In general, property owners are bound by restrictive covenants if they took the property with notice of those covenants. *See Bowers Welding & Hotshot*, 699 P.2d at 305; *Hein v. Lee*, 549 P.2d 286, 292 (Wyo. 1976). Under the Appellees' interpretation, the covenants applicable to each lot may be discerned from the record. Under the Association's interpretation, however, lot owners are not given sufficient notice of what covenants apply to their properties, and of what other properties share the same covenants. As we have noted, the first set of covenants, applicable to Plats 1 and 2, was filed on August 14, 1970. The third set of covenants, applicable to Plat 3, was filed on

March 29, 1971. There is no document of record providing notice to owners in Plat 3 that they are also bound by the set of covenants applicable to Plats 1 and 2. There is also nothing in the chain of title to provide notice to owners in Plats 1 and 2 that the property in Plat 3 has become subject to the same covenants applicable to Plats 1 and 2. Further, the covenants applicable to Plats 1 and 2 indicate that they may be amended by the approval of 70% of the owners of lots in those plats. There is nothing in the record to provide these owners with notice that amendments could be effected as attempted by the Association, that is, by the approval of 70% of the owners in the entire subdivision, even though fewer than 70% of the owners of lots in Plats 1 and 2 voted to approve.

[¶21] In addition, as we noted previously, the different sets of covenants contain similar, but not identical, restrictions. For example, the first set of covenants, applicable to Plats 1 and 2, provides that "No residential structure having a floor area of Less than 750 square feet, not including open porches, patios and garages, shall be erected or placed on any residential Lot." The final set of covenants, applicable to Plats 4, 11, and 22, has a similar provision, but it requires residential structures to have floor area of 900 square feet or more. If the Association is correct that all of the property in the Star Valley Ranch subdivision has become aggregated under one set of covenants, there is no way of deciphering which square footage limitation now applies to which lots.

[¶22] We also note that the definition of the term "Property" quoted above appears in each of the first eight sets of covenants, covering Plats 1-10, 12-16, and 20. However, the definition of the term "Property" in the final three sets of covenants, covering Plats 4, 11, 17-18 and 21-22, is limited to "that certain real property described on Exhibit A attached hereto and made a part hereof." There is no mention of "such additions thereto as may hereafter be brought within the jurisdiction of the Association." Under the Association's interpretation, the inconsistent definitions of "Property" could lead to the anomalous result that some of the plats are aggregated while some are not.

[¶23] Finally, the Appellees' version provides an explanation for the annexation provision of the covenants. Under the Association's version, additional property may be added merely by bringing it within the jurisdiction of the Association. The annexation provision would be unnecessary and would serve no purpose.

> Our rules of interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning. *Arnold v. Ommen*, 2009 WY 24, ¶ 40, 201 P.3d 1127, 1138 (Wyo. 2009); *see also Caballo Coal Co. v. Fid. Exploration & Prod. Co.*, 2004 WY 6, ¶ 11, 84 P.3d 311, 314-15 (Wyo. 2004). We presume each provision in a contract has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless. *Scherer v. Laramie*

*Reg'l Airport Bd.*, 2010 WY 105, ¶ 11, 236 P.3d 996, 1003 (Wyo. 2010).

*Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012); *Sheridan Fire Fighters Local No. 276 v. City of Sheridan*, 2013 WY 36, ¶ 16, 303 P.3d 1110, 1115 (Wyo. 2013).

[¶24] For these reasons, we agree with the district court's ruling. Each set of covenants remains applicable only to the plats listed in its Exhibit A, and approval by 70% of the lot owners in those plats is necessary to amend the covenants. Because only 60% of the lot owners in Plats 1 and 2 voted to amend their covenants, and only 63% of the lot owners in Plat 3 voted to amend their covenants, the amendments failed as to those plats. The district court did not err in holding that the amended covenants were invalid as they pertained to Plats 1, 2, and 3 of the Star Valley Ranch Subdivision.

[¶25] In its second issue, the Association raises the defense of impracticability. The district court wrote in its decision that "it is undisputed that a written agreement was not properly filed. . . . It is undisputed that the [Association] never attempted to record an agreement executed by at least 70% of the then record owners covered by their respective covenants." The Association does not seriously dispute these findings, and it agrees that the sets of covenants state that amendments require "a written agreement executed by seventy percent (70%) of the then record Lot Owners . . . placed on record in the Office of the County Recorder of Lincoln County." The Association contends, however, that it was excused from complying with that requirement on the basis of impracticability.

[¶26] The Association submitted the signed approvals of the lot owners to the County Clerk for filing. The County Clerk refused to record the signature pages. This refusal, according to the Association, made it impossible to comply with the requirement of filing an agreement. It relies on *Mortenson v. Scheer*, 957 P.2d 1302, 1306 (Wyo. 1998), in which we said that the "rule of impracticability to excuse performance is invoked when supervening circumstances render performance of one of the conditions of the contract impracticable."

[¶27] The Appellees counter that it would not have been impracticable to file an agreement if the Association had gone about it differently. They point out that Wyo. Stat. Ann. § 34-1-102 (LexisNexis 2013) defines a "conveyance" to include "every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity." The Appellees contend that an amendment to existing covenants fits the definition of a conveyance. Wyoming law requires conveyances to be "acknowledged by the party or parties executing same, before any notarial officer." Wyo. Stat. Ann. § 34-1-113. County Clerks in Wyoming are required to "receive and record at length all deeds, mortgages, conveyances, patents, certificates and instruments left with him for that

8

purpose." Wyo. Stat. Ann. § 34-1-119(a). The Appellees claim that the Association could have asked lot owners to return notarized forms approving of the amendments, and the County Clerk would have filed and recorded those documents.

[¶28] The Appellees rely on *Riverview Heights Homeowners' Ass'n v. Rislov*, 2009 WY 55, 205 P.3d 1035 (Wyo. 2009), in which the applicable covenants provided for amendment "by instruments executed and acknowledged in the form prescribed for the execution of deeds by seventy-five (75) percent of the owners of the total acreage contained in this tract." *Id.*, ¶ 3, 205 P.3d at 1037. The homeowners' association instead filed an "Amendment to Restrictive Covenants" that was "executed by the Association's officers, whose signatures were notarized." *Id.*, ¶ 4, 205 P.3d at 1037. We concluded that the Association had not complied with the covenants' requirement to file instruments executed and acknowledged by the owners, and ruled that the Association's attempt to amend the covenants was invalid. *Id.*, ¶ 21, 205 P.3d at 1040. The Appellees contend that the same is true in this case.

[¶29] We note that the language of the covenants in *Riverview* is not the same as the language in the sets of covenants for the Star Valley Ranch subdivision. The covenants in *Riverview* required "instruments executed and acknowledged in the form prescribed for the execution of deeds." The Star Valley Ranch covenants require only execution, not acknowledgement, and do not specifically require instruments in the form of deeds. But we do not need to decide in this case whether the Association was required to obtain notarized signatures from the Star Valley Ranch lot owners.

[¶30] Even if the Clerk had accepted and recorded the copies of the forms signed by the owners to indicate their approval of the amended covenants, those documents still would not validly amend the covenants. From the beginning of its effort to amend the covenants, the Association made it clear that its intent was to establish a single, unified set of covenants to cover the Star Valley Ranch subdivision as a whole. The resolution it passed supporting the amendments explained that the amendments would create a "single uniform version" of the covenants. The solicitation it sent out to lot owners indicated that a uniform set of covenants would be established. The amended covenants also purported to establish a single set of covenants applicable to all of the property in the subdivision. As counsel for the Appellees expressed during a hearing before the district court, the Association took an all or nothing approach. Fewer than 70% of the lot owners in Plats 1, 2, and 3 approved of the amendments and, therefore, the Association's efforts failed as a whole. The amendments were never validly approved, so no matter what document the Association filed or tried to file with the County Clerk, the amendments were invalid. The Association's claim of impracticability fails because, even if the County Clerk had accepted the document offered by the Association, the amendments were still invalid.

[¶31] In its third issue, the Association contests the Appellees' standing to challenge the amendments as a whole. The Association points out that the district court determined

that each of the eleven sets of covenants had to be amended separately. Based on that ruling, the Association does not dispute that the Appellees have standing to challenge the amendments to the sets of covenants applicable to the property they own. The Association maintains, however, that the Appellees do not have standing to challenge the amendments to the sets of covenants applicable to Plats in which the Appellees do not own property.

[¶32] With regard to standing, we have said:

> A litigant has standing when he has a personal stake in the outcome of the controversy. In the declaratory judgment context, the requirement that a litigant have a personal stake in the outcome of the controversy is intended to ensure that he or she is sufficiently interested in a case to present a justiciable controversy.

*Carnahan v. Lewis*, 2012 WY 45, ¶ 18, 273 P.3d 1065, 1071 (Wyo. 2012) (internal citation omitted). The Association contends that the Appellees lack standing because they do not have a personal stake in the application of the amended covenants to Plats in which they own no property.

[¶33] As an initial matter, we note that the Appellees own lots in six of the twenty-one plats. They plainly have standing to challenge the amendments as to those plats. Further, some sets of covenants cover more than one plat. Phase 7, for example, covers Plats 12, 13, and 14. Because one of the Appellees owns property in Plat 12, he has standing to challenge the amendments as they apply to all three plats. On this basis, the Appellees have standing to challenge the amendments as they apply to a total of eleven of the twenty-one plats.

[¶34] However, we also agree with the district court that the Appellees have standing to challenge the amendments as a whole. As explained above, the Association intended to establish a single, unified set of covenants applicable to the entire subdivision. Consistent with the Association's approach, the Appellees explicitly challenged the amendments as a whole, and as they applied to all of the property in the subdivision. For example, the Appellees alleged in their complaint that, "As owners in Plats 1, 2 and 3 did not approve to amend their Covenants, it is not possible to have a uniform set of Covenants for all twenty one (21) plats within the Star Valley Ranch Association rendering the vote for the amendment for any of the plats a nullity." The Appellees explicitly challenged the amendments as a single, unified set of covenants applicable to the entire subdivision, and their ownership of property in the subdivision gave them standing to do that.

[¶35] Affirmed.