# THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 91

APRIL TERM, A.D. 2025

**August 13, 2025**

DEE CONGER, in his capacity as Trustee for
the Dee L. Conger Jr. Revocable Trust,

Appellant
(Plaintiff),

v.                                                          S-24-0174

AVR HOMEOWNER'S ASSOCIATION,
INC., a Wyoming non-profit corporation,

Appellee
(Defendant).

*Appeal from the District Court of Lincoln County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
    Richard R. Thomas of Smith LC, Jackson, Wyoming.  Argument by Mr. Thomas.

*Representing Appellee:*
    Kara L. Ellsbury and Casey R. Terrell of Hirst Applegate, LLP, Cheyenne,
    Wyoming.  Argument by Mr. Terrell.

*Before BOOMGAARDEN, C.J., and FOX\* and FENN, JJ., and MCGRADY and
FROELICHER, D.J.*

* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the
Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this
matter on May 28, 2025.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are
requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of
any typographical or other formal errors so that correction may be made before final publication in the
permanent volume.**

**MCGRADY, District Judge.**

[¶1]    Dee Conger, as trustee of the Dee L. Conger Jr. Revocable Trust (Conger), appeals from the district court's entry of summary judgment in favor of AVR Homeowner's Association, Inc. (AVR I) and its denial of his motion for leave to file a second amended complaint.  This dispute arises from claims regarding the enforcement of restrictive covenants in the Alpine Village Subdivision at Alpine Airpark in Lincoln County, Wyoming.  Properties within the subdivision are purported to be subject to a dual-association governance structure involving two separate homeowners' associations: AVR (either AVR I or its potential successor, AVR Homeowners Association (AVR II)) and the Alpine Airpark Association, Inc. (AAA).  Conger alleged that AVR I and AAA unreasonably delayed and withheld approval of his residential construction application, resulting in increased costs.

[¶2]    The district court granted summary judgment in favor of AVR I and denied summary judgment as to AAA.  Conger subsequently settled with AAA.  The summary judgment in favor of AVR I rested on the district court's conclusion that Conger's proposed amendments to name AVR II as a party would be futile because they would fail as a matter of law.  We conclude the district court abused its discretion in denying leave to amend because Conger's proposed second amended complaint raised non-futile claims.  Because the reversal on the issue of futility will necessarily require further proceedings to sort out the correct parties and claims, summary judgment is premature, and that order is likewise reversed.  We remand for further proceedings.

## ISSUES

[¶3]    Conger raises two issues on appeal which we rephase as follows:

I.    Whether the district court abused its discretion in denying Conger's motion to amend the pleadings by erroneously concluding the amendments would be futile.

II.    Whether AVR I was entitled to summary judgment on Conger's claims in the AVR case.

## FACTS

[¶4]    In August 2020, Conger purchased Lot 77, a residential lot in the Alpine Village Subdivision located at the Alpine Airpark in Alpine, Wyoming.  At the time of purchase, the property included an existing residential structure.  Conger intended to demolish the existing structure and construct a new residence with an attached airplane hangar.  He hired an architect and had plans drawn up.

1

[¶5]     At the time of Conger's purchase, homeowners in the area acted as though the properties in the subdivision were subject to two sets of covenants, conditions, and restrictions (CCR) enforced by two separate homeowners' associations: AVR II and AAA. Both associations required lot owners to submit construction plans for review prior to any construction.  This dual-governance framework created a parallel approval requirement, necessitating approval from both associations before building.

[¶6]     AVR I was administratively dissolved by the Wyoming Secretary of State on September 9, 2011.  Despite this dissolution, the board for AVR I continued to act as though the association still existed.  In January 2013, the board president signed amended CCRs for AVR I.[1]  The board recorded the 2013 CCRs for AVR I with the Lincoln County Clerk on August 30, 2013.  In October, the AVR I board president filed Articles of Incorporation with the Secretary of State creating AVR II—nearly two years after the dissolution of AVR I.

[¶7]     Nothing in the record shows the AVR II board ever formally adopted or ratified the 2013 CCRs, and no subdivision-wide vote occurred.  Nonetheless, AVR II and its representatives continuously held themselves out as the governing HOA and represented to owners, including Conger, that the 2013 CCRs were valid.

[¶8]     On August 28, 2020, Conger submitted a Request for Approval (RFA) by email to an individual board member of AVR II and AAA.  The RFA included attachments and drawings for the new home.  However, there was a dispute about whether the initial RFA was complete.  Conger contended that his RFA was sufficiently complete on August 28, 2020, or at the very least, by November 23, 2020, and AVR II contended that additional materials were required.  In the end, AVR II deemed Conger's RFA sufficiently complete with the submission of an information form on November 30, 2020.  While all of this was happening, Conger demolished the existing residence and left the demolition debris on his lot.

[¶9]     The 2013 CCRs and the AAA CCRs prohibited construction of the new residence without approval from both the AVR II and the AAA boards.  The covenants provided that if AAA did not act within 10 days and if AVR II did not act within 30 days, the application would be deemed approved.  AVR II did not respond to Conger's RFA until January of 2021, after the 30 days had expired.  The board for AVR II met on January 2, 2021, and voted to delay consideration of the application until the demolition debris was removed. AVR II notified Conger of its decision by letter sent on January 20, 2021.  On May 4, 2021, AVR II issued its written approval, acknowledging debris removal.

---

[1] AVR I alleges that the 2013 CCRs are substantially similar to the association's pre-existing 1973 CCRs; however, the 1973 CCRs are absent from the record.

[¶10] Conger claims he intended to comply with all CCR requirements and delayed ordering materials until receiving formal approval from both associations. Although he ultimately purchased some steel in March 2021 to mitigate further delay-related damages, he maintains that the HOA's refusal to recognize the automatic approval of his application caused him to postpone broader procurement activities. He contends that this delay, coupled with inflation during that period, resulted in significantly higher construction costs. During the delay—spanning from the third quarter of 2020 through the third quarter of 2021—material costs surged sharply. Conger's expert estimated that construction costs increased by 21.7%, resulting in approximately $2.97 million in additional costs, or alternatively, $1.39 million across seven key material categories.

[¶11] In February 2021, Conger filed suit against AVR I. He later filed suit against AAA in October 2021. In each action, he asserted that the respective associations had breached the applicable covenants by unreasonably delaying and withholding approval of his construction plans, in violation of the CCRs and the implied covenant of good faith and fair dealing. He also sought a declaratory judgment that his application complied with the CCRs and should be approved. In the AVR I lawsuit, Conger named "AVR Homeowner's Association, Inc." as the defendant, under the assumption that this was the proper legal entity responsible for enforcing the subdivision's covenants. At the time, all parties—including the attorneys for the HOA—proceeded as if AVR I was the functioning HOA. An answer was filed on behalf of AVR I, and the case progressed through discovery with "AVR Homeowner's Association, Inc." participating as the defendant. However, AVR I no longer existed and was limited in its ability to act in the subdivision since 2011. The record revealed that the new corporation, AVR II, was effectively masquerading as AVR I in the litigation: individuals associated with AVR II were directing the defense and invoking the 2013 CCRs in the name of AVR I. This confusion was not clarified until late in discovery.

[¶12] The district court consolidated the AVR I and AAA cases for pretrial purposes, and discovery proceeded jointly. A critical development occurred on March 22, 2023, during a deposition of the designated corporate representative for AVR I. In that deposition, Conger learned for the first time the full extent of the dissolution of AVR I and the separate existence of AVR II. The deponent confirmed that AVR I had been defunct since 2011 and that AVR II was a distinct entity formed in October 2013. The deposition also revealed that the 2013 CCRs—upon which the association's defense was based—were signed and recorded at a time when neither AVR I nor AVR II was in existence. Additionally, Conger obtained evidence that no formal steps were ever taken by the AVR II board or the lot owners to adopt or ratify the 2013 covenants after AVR II was formed. In short, discovery indicated that the wrong defendant (AVR I instead of AVR II) may have been sued, and it cast doubt on whether the 2013 covenants were ever validly enacted or enforceable against the lot owners.

[¶13]   Armed with this new information, Conger promptly moved to amend his complaint in the AVR I case.  The day before the defendants filed their motion for summary judgment, he filed a motion for leave to submit a second amended complaint.  In the proposed amendment, Conger sought to add AVR II as a defendant, effectively substituting the correct HOA entity in interest due to the prior dissolution of AVR I.  He also sought to include a declaratory judgment claim against AVR II, asking the district court to invalidate the 2013 CCRs as null and unenforceable.  Additionally, he proposed adding a quiet title and slander of title claim on the grounds that the recording of the 2013 CCRs clouded the title to the property owners' lots.  Finally, Conger aimed to modify his existing breach of contract claim to name AVR II as the party responsible for the alleged covenant violations, while maintaining AVR I as a defendant in the alternative.

[¶14]   AVR I (through counsel effectively acting on behalf of AVR II) opposed the amendment, arguing the amendment would be futile.  At the same time, AVR I and AAA jointly pressed its summary judgment motion, contending that Conger's claims failed on the merits.  With respect to AVR I, the defendants' summary judgment briefing asserted that Conger's application had been automatically approved on December 30, 2020 (due to the 30-day deemed approved rule), and therefore any delay or increased costs thereafter were self-imposed by Conger.  This position was a stark reversal of its earlier stance: after many months of defending its January 2021 denial of Conger's plans, the HOA suddenly argued that it never needed to deny the plans because they were approved by default under the covenants.  In essence, AVR I maintained that Conger could not claim any breach by the HOA because the 2013 CCRs automatically granted him approval, and any failure to commence construction was his own fault.

[¶15]   Conger responded that this new argument ignored reality.  AVR II did issue a denial and withheld approval until May 2021—actions which, if AVR II were properly in the case, could constitute a breach of the covenants and a breach of the implied covenant of good faith and fair dealing.  He also argued that a declaratory judgment on the 2013 CCRs validity was necessary to determine whether AVR II had authority in the first place to impose any conditions on his project.

[¶16]   The district court held a combined hearing on July 18, 2023, to address Conger's motion to amend and the defendants' motion for summary judgment.  At the hearing, the district court denied Conger's motion to amend, ruling from the bench that the proposed amendments would be futile.  The district court reached its futility decision on two alternative bases: 1) regardless of which AVR entity was the defendant, both Conger and agents acting on behalf of AVR had ratified the 2013 CCRs; and 2) even if the amendment was allowed, the wording of the different version of the covenants were similar, leading to the same result.  Specifically, the district court reasoned that adding AVR II would not change the outcome because, in its view, Conger's declaratory judgment and slander-of-title claims concerning the 2013 CCRs were moot or without merit, and his breach of contract claim failed regardless of which HOA entity was the defendant.  The district court

4

then turned to the summary judgment motion. It denied summary judgment as to AAA (allowing Conger's claims against the Alpine Airpark Association to proceed) but granted summary judgment in favor of AVR I. In ruling for AVR I, the district court found there was no genuine issue of material fact on whether AVR I had "inappropriately denied" the plans, emphasizing that "[AVR I] didn't deny the plans" within the 30-day window and "it was not obligated to approve or deny the plans." It accepted the argument that Conger's plans had been automatically approved by default on December 30, 2020, finding that, "[by] [the HOA's] silence[,] the plans were automatically approved and any damages incurred by [Conger] as a result of a delay . . . [were] self-imposed." Accordingly, the district court entered summary judgment dismissing all of Conger's remaining claims against AVR I.

[¶17] Following these rulings, Conger reached a settlement with AAA, and his claims against AAA were dismissed with prejudice. That left the summary judgment in favor of AVR I as the sole dispositive ruling in the case. On April 3, 2024, the district court entered a final judgment in favor of AVR I, resolving all claims in the consolidated action. Conger timely filed a notice of appeal on April 30, 2024.

## STANDARD OF REVIEW

[¶18] We review a district court's denial of a motion to amend a pleading for an abuse of discretion. *Jasper v. Brinckerhoff*, 2008 WY 32, ¶ 8, 179 P.3d 857, 862 (Wyo. 2008). "A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances." *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008) (citing *Johnston v. Stephenson*, 938 P.2d 861, 862 (1997)). However, when a motion to amend is denied on grounds of futility, our review necessarily involves de novo consideration of the legal basis for the finding of futility. *Allred v. Bebout*, 2018 WY 8, ¶ 59, 409 P.3d 260, 277 (Wyo. 2018) (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013)). We also bear in mind that Rule 15 commands that leave to amend should be freely given "when justice so requires." W.R.C.P. 15(a)(2) (2025). Unless there is a valid reason—such as undue delay, bad faith, prejudice, or futility—a motion to amend should ordinarily be granted in the interest of resolving cases on their merits. *Halling v. Yovanovich*, 2017 WY 28, ¶ 22, 391 P.3d 611, 619 (Wyo. 2017) (citation omitted).

[¶19] We review a grant of summary judgment de novo, affording no deference to the district court's conclusions. *N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co.*, 2015 WY 150, ¶ 9, 362 P.3d 341, 344 (Wyo. 2015). In doing so, we examine the record from the viewpoint most favorable to the party opposing summary judgment, giving that party all favorable factual inferences. *Nowotny v. L & B Cont. Indus., Inc.*, 933 P.2d 452, 455 (Wyo. 1997). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56(a) (2025); *Nowotny*, 933 P.2d at 455.

**DISCUSSION**

*I. Granting Leave to Amend the Pleadings Would Not Be Futile.*

[¶20] Conger sought leave to file his second amended complaint to include AVR II. Wyoming law makes clear that leave to amend pleadings shall be freely given "when justice so requires." W.R.C.P. 15(a)(2). In practice, a court should not refuse leave to amend without a compelling reason such as undue delay, bad faith, undue prejudice, or futility. *Halling*, 2017 WY 28, ¶ 22, 391 P.3d at 619. The district court denied Conger's motion solely on the grounds of futility. Although futility may be a valid basis for denying amendment, this Court more typically finds futility when the amended complaint is subject to dismissal as a matter of law. *Allred*, 2018 WY 8, ¶ 59, 409 P.3d at 277.

[¶21] In Wyoming, HOAs are commonly organized as nonprofit corporations and derive their powers from a combination of CCRs, articles of incorporation, and bylaws. *Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.*, 2021 WY 3, ¶ 20, 478 P.3d 1171, 1178 (Wyo. 2021). These governing documents define the scope of authority for an HOA to manage common areas, enforce architectural standards, and regulate land use within a subdivision. *Id.* HOA authority is limited to what is expressly or implicitly granted by those instruments and applicable law. *Id.* We have recognized that covenants, bylaws, and articles of incorporation "are contractual in nature" and must be interpreted using contract law principles to determine the intent and limitations of HOA authority. *Id.* at ¶ 25, 478 P.3d at 1179. We further emphasized that the duration of authority for an HOA is defined by its articles and the rights established in the covenants, which "run with the land" and are appurtenant to ownership. *Id.* at ¶¶ 27–30, 478 P.3d at 1179. HOA powers are not open-ended and must be exercised within the framework established by these foundational documents. *Goglio v. Star Valley Ranch Ass'n*, 2002 WY 94, ¶ 17, 48 P.3d 1072, 1078–79 (Wyo. 2002), *overruled on other grounds by Matter of Mears*, 2018 WY 109, ¶¶ 18–20, 426 P.3d 824, 828–29 (Wyo. 2018).

[¶22] Clear and unambiguous covenants are enforced according to their plain meaning. *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo. 1996). "Restrictions upon the use of the land are not favored," and any ambiguities are construed in favor of the free use of property. *Hutchison v. Hill*, 3 P.3d 242, 245 (Wyo. 2000). Nevertheless, when the intent to restrict is clear and the covenant is properly enacted, Wyoming courts will uphold and enforce the restriction according to its terms. *Rafter J. Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 21, 558 P.3d 562, 569 (Wyo. 2024).

[¶23] For a covenant to bind subsequent landowners, it must "run with the land"—meaning it must be appurtenant to the property and automatically transfer upon conveyance of title. *See Lingle Water Users' Ass'n v. Occidental Bldg. & Loan Ass'n*, 297 P. 385, 387 (Wyo. 1931); *Gayhart as Tr. Of Gayhart Living Trust v. Corsi*, 2020 WY 58, ¶ 27, 462

P.3d 904, 911 (Wyo. 2020). Under Wyoming law, four elements must be satisfied for a covenant to run with the land: 1) the original covenant must be enforceable; 2) the covenanting parties must have intended it to run with the land; 3) it must "touch and concern" the land; and 4) there must be privity of estate between the parties to the dispute. *Mathisen v. Thunder Basin Coal Co., LLC*, 2007 WY 161, ¶ 14, 169 P.3d 61, 65–66 (Wyo. 2007).

[¶24] These same principles govern the enforcement actions of HOAs. An HOA may enforce restrictive covenants only if it is a valid legal entity and the covenants were properly adopted in accordance with applicable governing documents and legal formalities. *Prancing Antelope I,* 2021 WY 3, ¶¶ 23–24, 478 P.3d at 1178. Wyoming law does not recognize covenant enactments or enforcement actions by entities that are wholly unauthorized, defunct, or acting without a traceable and lawful basis for authority. *Cash v. Granite Springs Retreat Ass'n, Inc.*, 2011 WY 25, ¶¶ 14–17, 248 P.3d 614, 619–20 (Wyo. 2011); *Prancing Antelope I*, 2021 WY 3, ¶¶ 31, 33–36, 478 P.3d at 1180–81. In particular, a dissolved HOA lacks the capacity to create new covenants or to engage in ongoing governance or enforcement activities, except to the limited extent permitted during the statutory winding-up process. *See* Wyo. Stat. Ann. § 17-19-1406(a); *Prancing Antelope I*, 2021 WY 3, ¶¶ 23–24, 478 P.3d at 1178. Where an association has been administratively dissolved and fails to formally assign its rights or to complete winding up in accordance with its bylaws and governing law, it no longer retains covenant enforcement authority. *See* Wyo. Stat. Ann. § 17-19-1406(a)(iv)–(v); *Prancing Antelope I*, 2021 WY 3, ¶ 31, 478 P.3d at 1180.

[¶25] Wyoming does not recognize "inherent" enforcement power in successor HOAs. *Prancing Antelope I*, 2021 WY 3, ¶¶ 34, 41, 45–46, 478 P.3d at 1181–83. Rather, a successor entity may enforce restrictive covenants only if it demonstrates a valid and continuous chain of authority originating with the original declarant. *Id*. at ¶¶ 42–46, 478 P.3d at 1182–83. Enforcement may be premised either on an express assignment of rights or on equitable doctrines such as equitable assignment or assignment by estoppel, provided the successor can establish continuity of governance, formal ratification, or a general development scheme. *Id*. at ¶¶ 36–46, 478 P.3d at 1181–83. Mere similarity in name, structure, or documentation does not establish legal succession. *Id*. at ¶¶ 33–34, 478 P.3d at 1181. The burden of proving authority to enforce rests squarely on the entity asserting it. *Id*. at ¶ 36, 478 P.3d at 1181; *In re Walsh*, 2004 WY 96, ¶ 19, 96 P.3d 1, 7–8 (Wyo. 2004) (citing *Osborn v. Manning*, 685 P.2d 1121, 1124 (Wyo. 1984)).

[¶26] Moreover, a successor HOA cannot validly adopt or amend restrictive covenants unless it complies strictly with the procedural requirements established in the original governing instruments. *Star Valley Ranch Ass'n v. Daley*, 2014 WY 116, ¶¶ 24–30, 334 P.3d 1207, 1213–14 (Wyo. 2014). Any purported enactments or amendments adopted without proper authority or in contravention of those procedures are unenforceable. *Cash*, 2011 WY 25, ¶¶ 14–17, 248 P.3d at 619–20.

[¶27]   Accordingly, where an HOA such as AVR II purports to enforce covenants that were originally recorded by a now-dissolved predecessor such as AVR I, it must demonstrate either that it has been assigned the rights of the original declarant or that it qualifies as a legal or equitable successor.

[¶28]   The district court's primary rationale for denying the motion to amend was based on futility, specifically finding that the parties had ratified the 2013 CCRs through their conduct.  While the district court explicitly recognized that "the 2013 covenants were not officially adopted by [AVR II] after its re-incorporation in 2013," it applied agency law principles of ratification to validate the CCRs.  The district court relied on two key ratification theories.  First, relying on *Lahnston v. Second Chance Ranch Co.*, 968 P.2d 32 (Wyo. 1998), the district court applied the agency doctrine where "after a transaction is entered into by a second party that purports to be an act for a principal, the principal manifests an intent to be bound by it."  Second, the district court relied on *Farmers' State Bank of Riverton v. Haun*, 222 P. 45 (Wyo. 1924) and a treatise on corporations, for the concept of retroactive ratification, which it defined as "the subsequent adoption and affirmation by one person of an act which another without authority has previously assumed to do for him while purporting to act as his agent."  Ultimately, the district court determined that "both the [Appellant] and [AVR II] ratified AVR's 2013 covenants by acknowledging their terms and accepting their benefits."

[¶29]   However, this agency-based ratification analysis contains a fundamental flaw: no proof in the record that AVR I or AVR II had the authority to act as a principle or an agent.  Without the original governing documents in the record, there is no evidence demonstrating that either AVR I or AVR II possessed any legal authority to create the 2013 CCRs or to ratify and enforce them. *See Prancing Antelope I,* ¶¶ 23–24, 478 P.3d at 1178 (requiring valid legal entity to enforce covenants adopted in accordance with governing documents and legal formalities); *Star Valley Ranch Ass'n*, 2014 WY 116, ¶¶ 24–30, 334 P.3d at 1213–14 (successor HOA must follow procedural requirements in original governing documents to amend covenants).  This alone makes non-futile Conger's claim for a declaratory judgment that the 2013 CCRs are invalid and unenforceable.  Conger alleged that the CCRs were recorded by individuals acting on behalf of AVR I after it had been administratively dissolved and before AVR II had been formed.  He further alleged that AVR II never formally adopted the CCRs, and that the lot owners never ratified them.  If proven, these facts could support a viable claim that the 2013 CCRs were never validly enacted.

[¶30]   Conger also alleged that AVR II's continued assertion of authority under the 2013 CCRs created a false cloud on his title, justifying claims for quiet title and potentially even slander of title.  Wyoming law permits landowners to seek declaratory or equitable relief to remove invalid encumbrances. *See* Wyo. Stat. Ann. §§ 1-28-101 through -111 (1977) (Injunctions) and Wyo. Stat. Ann. §§ 1-37-101 through -115 (2014) (Uniform Declaratory

8

Judgments Act). Given the ongoing assertion of rights by AVR II under the contested CCRs, the controversy is active and justiciable.

[¶31] The proposed complaint also reasserted Conger's contract-based claims—this time directed at AVR II. Conger's theory is straightforward: by disregarding the automatic-approval clause and delaying his project based on an extracontractual demand, AVR II breached its obligations. He alleges the actions of AVR II violated the implied covenant of good faith and fair dealing—an obligation Wyoming courts recognize in every contract. *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 24, 18 P.3d 645, 655 (Wyo. 2001). These are classic contract disputes, dependent on factual determinations regarding the conduct of AVR II and its justification for the delay. Whether Conger can ultimately prove up his claims remains to be seen.

[¶32] Each of the proposed claims—declaratory relief, quiet title, breach of contract, and breach of the implied covenant—stated a legally cognizable theory and raised material factual disputes. The proposed amendment was designed to bring the real controversy before the court and to substitute the proper defendant.

[¶33] AVR I argued that adding AVR II would not change the outcome because either the covenants were valid and automatically approved Conger's plans (meaning no breach occurred), or they were invalid, and he suffered no legally compensable harm because any delay was self-imposed and damages were speculative. We are not persuaded. These arguments raise factual and legal questions that cannot be resolved as a matter of law on the current record. For example, if the covenants operated to approve the plans by default, did the subsequent denial by the HOA and insistence on debris removal unlawfully interfere with Conger's right to proceed? A factfinder could conclude that the conduct of the HOA breached the implied covenant of good faith by effectively nullifying the 2013 CCR default approval process. Alternatively, if the covenants were invalid, AVR II may have lacked authority to impose any conditions on Conger or his property.

[¶34] The district court did not address these scenarios because it saw no legal distinction in the chain of authority between AVR I and AVR II. On remand, with AVR II added to the case, the court can properly assess these claims on a full record. We express no view on the merits but reject the conclusion that Conger's claims can be dismissed out of hand as a matter of law given the factual and legal questions identified on appeal.

[¶35] The district court abused its discretion in concluding that Conger's proposed claims were futile. We therefore reverse that ruling and remand with instructions to grant Conger leave to amend his pleading.

## II. Summary Judgment in Favor of AVR I Was Premature

[¶36] Conger challenges the district court's grant of summary judgment to AVR I, arguing

that the 2013 CCRs were not valid or properly followed, and that AVR II was not the proper successor in interest to AVR I. In response, AVR I argues that summary judgment in its favor was proper because the 2013 CCRs are valid and were followed correctly. Because we conclude that Conger should have been granted leave to amend his complaint, we also conclude that summary judgment should not have been granted. Until the proper parties and claims are sorted out through the amendment and responsive pleadings processes, summary judgment is premature.

## CONCLUSION

[¶37] The district court's order denying Conger's motion for leave to file a second amended complaint is reversed. The proposed claims against AVR II for declaratory relief, quiet title, breach of contract, and breach of the implied covenant were not futile. On remand, the district court is directed to grant Conger leave to file his second amended complaint. Because we reverse the district court's order denying leave to amend, we also reverse the district court's order granting summary judgment as a matter of law in favor of AVR I.

[¶38] Reversed and remanded with instructions to grant the motion to amend and conduct further proceedings consistent with this opinion.