# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 3

OCTOBER TERM, A.D. 2020

January 7, 2021

PRANCING ANTELOPE I, LLC,
a Wyoming limited liability company;
CHRIS SHANNON and
CYNTHIA G. BLOOMQUIST,

Appellants
(Defendants),

v.

S-20-0052

SARATOGA INN OVERLOOK
HOMEOWNERS ASSOCIATION, INC.,
a Wyoming nonprofit corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellants:*
C. M. Aron, Aron Law, Laramie, Wyoming. Argument by Mr. Aron.

*Representing Appellee:*
William L. Hiser, Brown & Hiser LLC, Laramie, Wyoming. Argument by Mr. Hiser.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]   In conjunction with its development of the Saratoga Inn Overlook Subdivision (Subdivision), Orion Point, LLC (Orion Point), whose sole members are Cynthia Bloomquist and Chris Shannon, designated a common area for the enjoyment of all Subdivision lot owners and established the Saratoga Inn Overlook Homeowners Association, Inc. (HOA1). HOA1 was administratively dissolved, and Ms. Bloomquist unilaterally formed another Saratoga Inn Overlook Homeowners Association, Inc. (HOA2). Ms. Bloomquist then sold Orion Point's remaining lots in the Subdivision. Subsequently, Ms. Bloomquist conveyed the common area to Prancing Antelope I, LLC—another limited liability company that she owned with Mr. Shannon. HOA2 brought this action against Ms. Bloomquist, Mr. Shannon, and Prancing Antelope I, LLC (collectively, Prancing Antelope), asserting claims for quiet title, ejectment, breach of fiduciary duty, conversion, and punitive damages. The district court granted summary judgment to HOA2 on its claim for ejectment. After a bench trial, it entered judgment in favor of HOA2 on its claim for breach of fiduciary duty and awarded punitive damages in the amount of $35,000. Prancing Antelope appeals. We affirm.

## *ISSUES*

[¶2]   The issues are:

> 1. Was HOA2 entitled to summary judgment on its claim for ejectment?
>
> 2. Does W.R.C.P. 19 require the joinder of members of HOA1?
>
> 3. Did the district court abuse its discretion when it awarded attorneys' fees as damages?

## *FACTS*

[¶3]   The following facts are undisputed and were before the district court on the parties' cross-motions for summary judgment.

**A.     The Saratoga Inn Overlook Subdivision and Lot 1**

[¶4]   In 2007, Ms. Bloomquist and Mr. Shannon were the only members of Orion Point. Orion Point owned a large parcel of land in Saratoga, Wyoming, and Lot 1, Block 1 (Lot 1) of a separate subdivision—the Saratoga Inn Country Club Subdivision #1.

1

[¶5]    Ms. Bloomquist, as a member of Orion Point, developed a residential subdivision on Orion Point's large parcel of land.  Ms. Bloomquist formed HOA1 and incorporated it on October 18, 2007, as a "Mutual Benefit" corporation pursuant to Wyoming law.  The Articles of Incorporation stated:

### ARTICLE I
The name of the nonprofit corporation shall be **Saratoga Inn Overlook Homeowners Association, Inc.** The duration of the corporation shall be perpetual.

.    .    .

### ARTICLE VI
On dissolution of the corporation, any assets of the corporation shall be distributed to the then members of the corporation on the same prorata [sic] basis as each member is entitled to cast votes.

[¶6]    Orion Point conveyed Lot 1 to HOA1 as a common area.  Ms. Bloomquist filed a Declaration of Covenants, Conditions and Restrictions for Saratoga Inn Overlook Subdivision (Covenants).

[¶7]    The Covenants provided that "[t]he Homeowners Association shall own Saratoga Inn Country Club Subdivision #1, Block 1, Lot 1 located on the south side of Pic Pike Road" and that "Lot 1, owned by Saratoga Inn Overlook Homeowners Association, Inc. is dedicated for the common use and enjoyment of the Subdivision, Lot and Home Owners."  The Covenants also stated:

### ARTICLE 1 DEFINITIONS

.    .    .

**Section 1.9. "Homeowners Association" or "Association"**
Shall mean the Saratoga Inn Overlook Homeowners Association, Inc., a Wyoming non-profit corporation, its successors and assigns established to administer and enforce the terms and conditions of these Covenants.  *The Homeowners Association shall own Saratoga Inn Country Club Subdivision # 1, Block 1, Lot 1 located on the south side of Pic Pike Road.*

.    .    .

2

**Section 1.14 "Saratoga Inn Overlook"**
Shall mean and refer to the Subdivision known as Saratoga Inn Overlook *including the aforementioned common areas*.

. . .

**ARTICLE 2 PROPERTY RIGHTS**

**Section 2.1. Owners' Right to Use.**
*Every Owner shall have a right to use and enjoy the Common Area south of Pic Pike Road which shall belong to the Homeowners Association and shall pass with the title to every Lot . . . . The common area rights granted to the Homeowners' Association shall be exclusive to its members, families, and guests and in no event may the Homeowners' Association convey to any third parties not so related an interest in this easement.*

. . .

**ARTICLE 3 ASSOCIATION MEMBERSHIP AND VOTING**

**Section 3.1 Association Membership.**
Each record owner of a Lot shall be a member of the Homeowners Association. Membership shall be appurtenant to and may not be separated from ownership of a Lot.

[¶8]   Ms. Bloomquist formalized the Bylaws of HOA1 on February 18, 2011. The Bylaws provide that the "Saratoga Inn Overlook Homeowners Association . . . shall be comprised of owners of lots in the [Subdivision] . . . . Lot owners automatically become members of the association upon purchase of a lot and shall remain a member during the period of ownership." The Bylaws also provide:

> The lands and improvements constructed and located on the lands included in the [Covenants] are subject to the use and ownership as set forth and are subject to the terms, covenants, conditions, easements, and restrictions, uses, limitations, and obligations, all of which shall be deemed to run with the land, shall be a burden and a benefit to Declarant and any person acquiring or owning an interest in the real property and improvements, their grantees, successors or assigns.

3

[¶9]    Originally, Orion Point owned all lots in the Subdivision, associated with HOA1. Ms. Bloomquist served as a board member and president of HOA1 from its inception until its dissolution.

## B.    Dissolution of HOA1 and Formation of HOA2

[¶10]  Beginning in December 2010 and thereafter, HOA1 failed to file annual reports with the Wyoming Secretary of State.  In 2012, HOA1 was administratively dissolved for failure to pay state corporate taxes.  Three years later, in 2015, Ms. Bloomquist attempted to reinstate HOA1, but the statutory time for reinstatement had passed.  Ms. Bloomquist solved this dilemma by filing new articles of incorporation identical to those of HOA1.  Her actions created a second homeowners association, Saratoga Inn Overlook Homeowners Association, Inc. (HOA2), with the same name, articles of incorporation, bylaws, and covenants as HOA1.  Ms. Bloomquist served as a board member and president of HOA2.

## C.    Sale of Orion Point's Interests

[¶11]  In 2016, Ms. Bloomquist and Mr. Shannon entered into negotiations to sell Orion Point's thirty remaining lots to TDC Properties, LLC, a limited liability company owned by Kathy and Bryan Drake (collectively, the Drakes).  The negotiations and contract documents did not distinguish between HOA1 and HOA2.  The contract to purchase the properties was contingent on proof of the HOA ownership of Lot 1.[1]  To satisfy this contingency, Ms. Bloomquist provided Schedule A of the O&E (ownership and encumbrance) title report reflecting title to Lot 1 vested in the "Saratoga Inn Overlook Homeowners Association, Inc."

[¶12]  Orion Point conveyed all its remaining lots in the Subdivision to TDC Properties, LLC, on November 30, 2016.  This left Orion Point with no property in the Subdivision and vested title of the majority of the Subdivision properties in TDC Properties, LLC.  On December 12, 2016, the Drakes were elected officers for HOA2.  This terminated Ms. Bloomquist as a board member and president.

## D.    Transfer of Lot 1

[¶13] Approximately seven months later, Ms. Bloomquist, as "President/Director of Saratoga Inn Overlook Homeowners Association, Inc.," executed a warranty deed transferring Lot 1 to a limited liability company, Prancing Antelope I, LLC.  Ms.

---

[1] The contract provided: "Contract is contingent on Seller's provision of O&E title report showing clear title to Lot 1, Block 1, Saratoga Inn Country Club Subdivision #1 owned by Saratoga Inn Overlook Homeowners Association."

Bloomquist and Mr. Shannon were the sole members of this LLC. The deed contains no restrictions or burdens related to the Covenants or the Subdivision lot owners' right of access.

## E.    Proceedings Below

[¶14]   HOA2 sued Prancing Antelope asserting claims for quiet title, ejectment, breach of fiduciary duty, and conversion. Prancing Antelope moved to join additional parties. It argued that the members of HOA1 on the date of its dissolution must be joined as parties pursuant to W.R.C.P. 19(a)(1) and (2). The district court denied the motion. The parties filed cross-motions for summary judgment. Prancing Antelope sought summary judgment based on its argument that HOA2 has no legal interest in Lot 1; HOA2 sought partial summary judgment on its claims to quiet title and for ejectment.

[¶15]   The district court denied Prancing Antelope's motion for summary judgment and denied HOA2's motion for summary judgment as it related to quiet title. The district court granted summary judgment on HOA2's claim of ejectment. It concluded that HOA2 was a successor to HOA1 and the owner of Lot 1. A bench trial was held on the remaining issues.[2] The district court issued findings of fact and conclusions of law in favor of HOA2 on its claim for breach of fiduciary duty and awarded $35,000 in punitive damages. Prancing Antelope appeals.

## *DISCUSSION*

## I.    *Was HOA2 entitled to summary judgment on its claim for ejectment?*

[¶16]   Prancing Antelope presents two issues. First, it contends that HOA1's Articles of Incorporation required distribution of Lot 1 to HOA1 members on its dissolution. Next, it argues that the district court erred when it treated HOA2 as a "successor" to HOA1. We address both of those arguments in our discussion of the district court's grant of summary judgment on HOA2's claim for ejectment.

## A.    Standard of Review

[¶17]   We review a "summary judgment in the same light as the district court, using the same materials and following the same standards." *O'Hare v. Hulme*, 2020 WY 31, ¶ 17, 458 P.3d 1225, 1233 (Wyo. 2020) (quoting *Little Med. Creek Ranch, Inc. v. D'Elia*, 2019 WY 103, ¶ 15, 450 P.3d 222, 228 (Wyo. 2019)). "Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to

---

[2] The remaining issues were HOA2's claims for breach of fiduciary duty and conversion of corporate assets to personal use, and for legal fees and punitive damages.

5

judgment as a matter of law." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 110, 437 P.3d 758, 794–95 (Wyo. 2019) (quoting *Bogdanski v. Budzik*, 2018 WY 7, ¶ 18, 408 P.3d 1156, 1160 (Wyo. 2018)).

[¶18]   "The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law." *Mantle*, ¶ 110, 437 P.3d at 794–95 (quoting *Bogdanski*, ¶ 18, 408 P.3d at 1160); W.R.C.P. 56(c).   After a prima facie showing is made, the burden shifts to the party opposing the motion to present evidence of genuine issues of material fact.  *Mantle*, ¶ 110, 437 P.3d at 795.   The facts "are considered from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record."  *Id.* (quoting *Bogdanski*, ¶ 18, 408 P.3d at 1161).

## B.   Analysis

[¶19]   To prevail on a claim for ejectment, a plaintiff must establish legal title to the premises and that he is entitled to possession of the premises.  Wyo. Stat. Ann. § 1-32-202; *Bragg v. Marion*, 663 P.2d 505, 506 (Wyo. 1983) ("an ejectment action requires proof that the complainant is illegally being kept from possession"); *Allen v. Houn*, 30 Wyo. 186, 219 P. 573, 583 (1923).

[¶20]   Legal title to Lot 1 was disputed.   Prancing Antelope contended it, not HOA2, owned Lot 1.   HOA2 claimed it was the rightful owner.   The district court held that HOA2 was the successor to HOA1,[3] and it "is entitled to [Lot 1] and subject to, the rights and duties set forth in the Covenants, Articles of Incorporation and Bylaws."   It reasoned that because these "documents state that Lot 1[] is to be held by the HOA for the use of the members of the HOA[,] membership in the HOA run[s] appurtenant to the land and cannot be separated from the property."   The court held that HOA2 has legal title to Lot 1 and therefore prevails on its claim for ejectment as a matter of law.

[¶21]   We first address the question of whether HOA1's Articles of Incorporation required distribution of Lot 1 to HOA1 members on its dissolution.   We then consider whether the district court properly determined HOA2 was a successor to HOA1.

### 1.  When HOA1 was administratively dissolved, was it required to distribute its assets to its members?

---

[3] The conclusion that HOA2 was HOA1's successor formed the basis for the district court's grant of summary judgment in favor of HOA2 on its claim of ejectment and its ruling on joinder.  *See infra* ¶ 49.

6

[¶22] Prancing Antelope contends that HOA1's Articles of Incorporation required distribution of its assets on dissolution to its then members and, as a result, HOA2 could not succeed HOA1. Prancing Antelope also argues that it was error for the district court to disregard this requirement in ruling on summary judgment.

[¶23] The Wyoming Nonprofit Corporation Act (Act) provides that dissolution of a corporation does not transfer title to the corporation's property. *See* Wyo. Stat. Ann. § 17-19-1406(b)(i).

[¶24] The Act requires a dissolved mutual benefit corporation to transfer its assets when a condition requiring transfer occurs "by reason of the dissolution" and requires assets to be transferred in accordance with a corporation's articles and bylaws, subject to "contractual or legal requirements." Wyo. Stat. Ann. § 17-19-1406(a)(iv)–(v).[4]

[¶25] A "condition requiring transfer" of Lot 1 occurred by reason of HOA1's dissolution. Any transfer was subject to contractual and legal requirements, including any requirements contained in HOA1's Covenants and Bylaws. *See* Wyo. Stat. Ann. § 17-19-1406(a)(v). Covenants, bylaws and articles of incorporation "are contractual in nature," and they are interpreted according to principles of contract law. *Goglio v. Star Valley Ranch Ass'n*, 2002 WY 94, ¶¶ 17–18, 48 P.3d 1072, 1078–79 (Wyo. 2002) (covenants), *overruled on other grounds by Matter of Mears*, 2018 WY 109, ¶¶ 17–18, 426 P.3d 824, 828 (Wyo. 2018); *Mueller v. Zimmer*, 2005 WY 156, ¶ 35, 124 P.3d 340, 359 (Wyo. 2005) (bylaws); *see also* 7A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 3640 (perm. ed., rev. vol. 2014 and Cum Supp. 2020) (articles of incorporation).

[¶26] Our goal in interpreting contract language is

---

[4] Winding up activities that may be conducted by a dissolved corporation pursuant to the Wyoming Nonprofit Corporation Act include:

> (iii)    Disposing of its properties that will not be distributed in kind;
> (iv)    **Returning, transferring or conveying assets held by the corporation upon a condition requiring return, transfer or conveyance, which condition occurs by reason of the dissolution, in accordance with such condition**;
> (v)    **Transferring, subject to any contractual or legal requirements, its assets** as provided in or authorized by its articles of incorporation or bylaws;
> .    .    .
> (viii)    Doing every other act necessary to wind up and liquidate its assets and affairs.

Wyo. Stat. Ann. § 17-19-1406(a)(iii)–(v), (viii) (LexisNexis 2019) (emphasis added).

7

to determine the parties' intent according to the plain and ordinary meaning of the terms used in the agreement. *Four B Props., LLC v. Nature Conservancy*, 2020 WY 24, ¶ 33, 458 P.3d 832, 841 (Wyo. 2020) (citing *Davison* [*v. Wyoming Game & Fish Comm'n*], 2010 WY 121, ¶ 9, 238 P.3d [556,] 560 [(Wyo. 2010)]). We interpret the agreement "as a whole and read each provision in light of the others to find the plain meaning. We avoid interpreting provisions in a way that makes the other provisions inconsistent or meaningless." *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016) (internal citation omitted) (citing *Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012)). Unless the terms of the agreement are ambiguous, "the easement language expresses and controls the drafting parties' intent." *Four B Props.*, 2020 WY 24, ¶ 34, 458 P.3d at 841 (citing *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 12, 327 P.3d 732, 737 (Wyo. 2014)). An agreement is ambiguous if it conveys a "double or obscure meaning." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 23, 226 P.3d 889, 905 (Wyo. 2010) (citing *Wolter v. Equitable Res. Energy Co.*, 979 P.2d 948, 951 (Wyo. 1999)). "When the provisions in the contract are clear and unambiguous, the court looks only to the 'four corners' of the document in arriving at the intent of the parties." *Claman*, 2012 WY 92, ¶ 26, 279 P.3d at 1013 (quoting *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo. 2011)).

Even so, "[d]etermination of the parties' intentions requires . . . consideration of the context within which the contract was made." *Davison*, 2010 WY 121, ¶ 9, 238 P.3d at 560. Thus, we "consider the circumstances surrounding execution of an agreement" such as "the parties' relationship, the subject matter of the contract, and the parties' apparent purpose in making the contract, to determine the parties' intent[], even when reviewing unambiguous contracts." *Ultra Res.*, 2010 WY 36, ¶ 43, 226 P.3d at 909 (citing *Mullinnix, LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 6, 126 P.3d 909, 915 (Wyo. 2006); *Moncrief v. Louisiana Land Exploration Co.*, 861 P.2d 516, 524 (Wyo. 1993); *Balch v. Arnold*, 9 Wyo. 17, 29, 59 P. 434, 436 (1899)). "Any examination of the context within which the contract was drawn is limited to ascertaining the intent of the parties in making the agreement." *Davison*, 2010 WY 121, ¶ 9, 238 P.3d at 560.

*Douglas as Tr. of Patricia Ann Douglas Revocable Tr. v. Jackson Hole Land Tr.*, 2020 WY 69, ¶¶ 14–15, 464 P.3d 1223, 1228 (Wyo. 2020).

[¶27] The Covenants provide that Lot 1, "owned by Saratoga Inn Overlook Homeowners Association, Inc. is dedicated for the common use and enjoyment of the Subdivision, Lot and Home Owners." The Covenants define the "Homeowners Association" as the "Saratoga Inn Overlook Homeowners Association, Inc., . . . **its successors and assigns established to administer and enforce the terms and conditions of these Covenants. The Homeowners Association shall own [Lot 1].**" (Emphasis added.) Finally, the Covenants establish that the "right to use and enjoy" Lot 1 "shall belong to the Homeowners Association and shall pass with the title to every Lot . . . [and] in no event may the Homeowners' Association convey to any third parties not so related an interest in this easement."

[¶28] The Bylaws state that the "[Homeowners] Association and its members have the right to enforce the Covenants, Conditions and Restrictions" applicable to the Subdivision. The Bylaws also provide that they "shall include provisions identical to those provided in the [Covenants]" and "[e]ach and every covenant, condition, restriction, and reservation contained in the [Covenants] or these Bylaws shall be considered to be an independent and separate covenant, condition, restriction and reservation."

[¶29] The Articles of Incorporation provide that the duration of the Saratoga Inn Overlook Homeowners Association, Inc., "shall be perpetual" and "On dissolution of the [Saratoga Inn Overlook Homeowners Association, Inc.], any assets of the corporation shall be distributed to the then members of the corporation . . . ."

[¶30] Prancing Antelope would have the Court focus exclusively on the provision of the Articles of Incorporation stating that "on dissolution" any assets "shall be distributed" to then HOA members. Our rules of construction do not support this narrow focus. When we read the language of the Covenants, Bylaws, and Articles of Incorporation together, the plain language demonstrates the intent that either "Saratoga Inn Overlook Homeowners Association, Inc." or "its successors" would own Lot 1. The Articles of Incorporation envision the Association's tenure to be perpetual; and the Covenants and Bylaws provide that rights to Lot 1 are appurtenant to and run with the land. Upon administrative dissolution, HOA1 was not required to distribute its assets to the then HOA members. As part of its unwinding process, it was permitted to transfer its assets to a successor organization. *See* Wyo. Stat. Ann. § 17-19-1406(a).

## 2. Is HOA2 a successor to HOA1?

[¶31] HOA1 was administratively dissolved in December 2012 for failure to pay its corporate taxes. *See* Wyo. Stat. Ann. § 17-19-1420.[5] The time to reinstate HOA1 expired before any attempt was made to reinstate it. *See* Wyo. Stat. Ann. § 17-19-1422 ("A corporation administratively dissolved under W.S. 17-19-1421 may apply to the secretary of state for reinstatement within two (2) years after the effective date of dissolution."). HOA1, a dissolved corporation, was statutorily prohibited from carrying "on any activities except those appropriate to wind up and liquidate its affairs . . . ." Wyo. Stat. Ann. § 17-19-1406(a). When Ms. Bloomquist found she could not reinstate HOA1, she, in 2015, incorporated HOA2—a new homeowners' association with the same name, articles of incorporation, bylaws, and covenants as HOA1. *See supra* ¶ 10. The district court determined that because both HOAs "were incorporated by Ms. Bloomquist, using essentially the exact same documents, . . . HOA #2[] is the successor to HOA #1."

[¶32] In the law, "successor" is a term of art. Black's Law Dictionary defines a "successor" as "1. Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor. 2. A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Successor*, *Black's Law Dictionary* (11th ed. 2019). *See Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007) (A "successor" corporation is "another corporation which through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." (quoting *Ginny's Kids Int'l, Inc. v. Office of Sec'y of State*, 29 P.3d 333, 336 (Colo. App. 2000))); *see also Redmond-Pac. Assocs. Gen. P'ship v. Sixty-01 Ass'n of Apartment Owners*, No. 51634-5-I, 2004 WL 2335355 (Wash. Ct. App. Oct. 18, 2004); *C & J Builders & Remodelers, LLC v. Geisenheimer*, 733 A.2d 193, 195 (Conn. 1999) (holding LLC could be successor to sole proprietorship).

[¶33] Evidence of "amalgamation, consolidation, or other assumption of interests" is required for the second association to be a successor to the first. *See Phoenix Capital*, 176 P.3d at 845. To hold otherwise would mean anyone could refile incorporation documents of an administratively dissolved corporation and claim that, as a successor corporation, the new entity is subject to the rights and duties of the original corporation. *See Sager v. Ivy Falls Plantation Homeowners' Ass'n, Inc.*, 793 S.E.2d 455, 458 (Ga. Ct.

---

[5] Wyo. Stat. Ann. § 17-19-1420 provides:

> The secretary of state may commence a proceeding under W.S. 17-19-1421 to administratively dissolve a corporation if any of the following has occurred . . .
>
>    (iv) The corporation does not deliver its annual reports or pay the annual license taxes to the secretary of state when due pursuant to W.S. 17-19-1630 . . . .

Wyo. Stat. Ann. § 17-19-1420(a)(iv) (LexisNexis 2019).

App. 2016). HOA2 is the successor to HOA1 in the sense that it followed HOA1 as the homeowners association for the Subdivision. More is required, however, for HOA2 to be a *legal* successor "entitled to and subject to, the rights and duties" of HOA1.

[¶34] A line of cases from Missouri, while not directly on point, is instructive. In *Valley View Vill. S. Improvement Ass'n. v. Brock*, 272 S.W.3d 927, 928 (Mo. Ct. App. 2009), a homeowners' association forfeited its charter and was not reinstated within the statutory time frame. A second association with an identical name (except for "Inc.") and identical bylaws and covenants was formed. The second association claimed it was the duly authorized homeowners' association for the subdivision, and owned the common areas, specifically the water system. *Valley View*, 272 S.W.3d at 929–30. The court held that, absent an assignment of the rights and privileges from the original association, the new association was not its successor even though the new association had a near-identical name and performed identical functions as the old association. *Id.* at 930–31. *See also Sager*, 793 S.E.2d at 459 ("merely filing articles of incorporation for a new entity and calling it the governing authority was not enough to create a legally enforceable successor interest in the New [Homeowners'] Association").

[¶35] In contrast, in *DeBaliviere Place Ass'n v. Veal*, the original homeowners' association was terminated for failure to file annual registrations and could not be reinstated due to a lapse in time. A new association was formed with the same name and it performed the same functions. The original association assigned its rights and obligations to the new association fourteen years after the original was dissolved. *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 672 (Mo. 2011). The court held that the assignment from the defunct association to the new association was valid and determined that the second association was the proper homeowners' association for the subdivision. *Id.*, 337 S.W.3d at 677–78.

[¶36] The distinguishing factor between these cases was the assignment. Where no assignment existed, the same name, identical formation documents, and identical functions were not sufficient to establish a second homeowners association as a successor to the original association. *See Valley View*, 272 S.W.3d at 930–31. Where an assignment took place, the court held the second association was a successor. *See DeBaliviere*, 337 S.W.3d at 677. We find the logic of these cases persuasive. It is undisputed that HOA1 did not formally assign its rights or the title to Lot 1 to HOA2. In the absence of an express assignment, HOA2 is not a successor of HOA1 unless an intent to assign can be inferred from the facts and events leading up to this lawsuit under the doctrine of equitable assignment.

### 3. Was there an equitable assignment or assignment by estoppel?

[¶37] An assignment "is a contractual undertaking by one party of the rights and obligations of another, such that the second steps into the shoes of the first." *Mendez v.*

11

*Huntington Forest Homeowners Ass'n*, No. CL 2017-0010888, 2018 WL 9945832, at *3 (Va. Cir. May 10, 2018). An assignment may also be found in equity, given sufficient facts, under the doctrines of assignment by estoppel and equitable assignment. *Id.*

[¶38] An "equitable assignment" is

> an assignment that gives the assignee a title which, though not cognizable at law, will be recognized and protected by equity. **Thus, an equitable assignment is the transfer of a present interest that for one reason or another does not amount to a legal assignment, but which a court of equity will recognize and imply from the circumstances and because of the equities involved.** An equitable assignment may exist where the parties intended to effect an assignment or where necessary to avoid injustice. An equitable assignment is an intention on one side to assign and an intention on the other to receive, if there is valuable consideration.

6 Am. Jur. 2d *Assignments* § 5, at 156–57 (2018) (emphasis added). "An equitable assignment depends on the equitable powers of a court for enforcement. A determination of whether an equitable assignment occurred is within the sound discretion of the court." 6 Am. Jur. 2d *Assignments* § 5, at 157.

[¶39] Courts have also applied the doctrine of assignment by estoppel in instances where an assignment was ratified by a party.

> Though traditionally accomplished by agreement, the doctrine of Assignment by Estoppel has [been] found . . . where an assignment agreement, while technically insufficient, is nevertheless ratified by the party seeking to avoid the assignment through their conduct and acceptance of the assignee as the proper party to a contract.

*Mendez*, 2018 WL 9945832, at *3 (citing *Oak Grove Const. Co. v. Jefferson Cnty.*, 219 F. 858 (6th Cir. 1915)) (holding that a party to a contract who ratifies an assignment by conduct cannot later contest its legitimacy).

[¶40] Assignment by estoppel is closely related to the doctrine of equitable estoppel which this Court has recognized:

> equitable estoppel is embodied by the following concept: "one who by his acts or representations intentionally or through culpable negligence induces another to believe

12

certain facts to exist, and the latter, not knowing the facts, acts on such belief to his substantial prejudice, the former is, in equity, estopped to deny the existence of such fact."

*Knori v. State, ex rel., Dep't of Health, Office of Medicaid*, 2005 WY 48, ¶ 10, 109 P.3d 905, 908 (Wyo. 2005) (quoting *State, Dep't of Family Servs. v. Peterson*, 957 P.2d 1307, 1311 (Wyo. 1998)). "In its current form, equitable estoppel requires 'some misrepresentation and is generally applied to prevent fraud, either constructive or actual.'" *Id.* (quoting *Peterson*, 957 P.2d at 1311).

[¶41] A determination of equitable assignment, or that the doctrine of assignment by estoppel applies, would position HOA2 as a successor to HOA1. We cannot conclude that HOA1 executed a legal assignment of Lot 1 to HOA2, however, we may affirm the district court on any basis that appears in the record. *Black Diamond Energy of Delaware, Inc. v. Wyoming Oil & Gas Conservation Comm'n*, 2020 WY 45, ¶ 45, 460 P.3d 740, 753 (Wyo. 2020) ("we are free to 'affirm a district court's ruling on any basis appearing in the record'" (quoting *Maverick Benefit Advisors, LLC v. Bostrom*, 2016 WY 96, ¶ 13, 382 P.3d 753, 757 (Wyo. 2016))).

> [An] appellate court may affirm a trial court ruling, even though the trial court's legal reasoning for the ruling was erroneous, if (1) the facts in the record are sufficient to support a proffered alternative basis, (2) the trial court's ruling is consistent with the view of the evidence under the alternative basis, and (3) the record is materially the same as would have been developed had the prevailing party raised the alternative basis for affirmance below.

5 Am. Jur. 2d *Appellate Review* § 630, at 461 (2018). *See also Halling v. Yovanovich*, 2017 WY 28, ¶ 12, 391 P.3d 611, 616 (Wyo. 2017); *Arnold v. Day*, 2007 WY 86, ¶ 14, 158 P.3d 694, 698 (Wyo. 2007); *Daniels v. Carpenter*, 2003 WY 11, ¶ 30, 62 P.3d 555, 566 (Wyo. 2003).

[¶42] Ms. Bloomquist's conduct as a director of HOA1 and HOA2 supports an equitable assignment. Ms. Bloomquist or Mr. Shannon served as the president and chairperson of HOA1 for its entire existence. Following its administrative dissolution, Ms. Bloomquist first attempted to resurrect HOA1. When she did not succeed, without notifying the members of HOA1 of its dissolution, she created HOA2, giving it the same name and using the same formation documents as HOA1.

[¶43] Ms. Bloomquist's actions in the sale of Orion Point's lots in the Subdivision support an equitable assignment. She failed to distinguish HOA1 from HOA2 when she was selling Orion Point lots to the Drakes. She actively fostered a misconception that

they were one and the same. Ms. Bloomquist did not notify the Drakes that HOA1 had been dissolved and HOA2 had been formed. During negotiations, Mrs. Drake requested proof of clear HOA title to Lot 1, and the sales contract was contingent upon showing clear title of Lot 1 with the HOA. Ms. Bloomquist met this contingency by providing the Drakes with a title report showing title for Lot 1 vested in the Saratoga Inn Overlook Homeowners Association. Ms. Bloomquist did not divulge that the "Saratoga Inn Overlook Homeowners Association" identified as the owner of Lot 1 on the title report was not the HOA in effect at the time of the sale. In short, Ms. Bloomquist's representations were intended to lead the Drakes to believe that there was only one HOA, and to rely on the title policy that the HOA owned Lot 1.

[¶44] The Articles of Incorporation and Covenants support an equitable assignment. The Articles of Incorporation for both HOAs state the homeowners association "shall be perpetual." The Covenants contemplate that the Subdivision will be governed by a homeowners association. The Covenants do not envision the dissolution of the homeowners association based on the failure of the board to carry out its responsibilities or the loss of the use and enjoyment of Lot 1. The Covenants were drafted by Ms. Bloomquist and provide that the HOA shall own Lot 1. The HOA is defined as the Saratoga Inn Overlook Homeowners Association, its successors and assigns. The Covenants state that "Lot 1 . . . is dedicated for the common use and enjoyment of the Subdivision, Lot and Home Owners" and the rights in Lot 1 are exclusive to lot owners and pass with title to every lot. The Covenants prohibit the HOA from "convey[ing] to any third parties not so related an interest in this easement" and establish that membership in the HOA "shall be appurtenant to and may not be separated from ownership of a Lot." These covenants run with the land.

[¶45] The Bylaws support an equitable assignment. The Bylaws of HOA1 and HOA2 incorporate every covenant. These include the requirement that Lot 1 be owned by an HOA consisting only of subdivision lot owners. HOA2 assumed the duties and responsibilities of HOA1, establishing the consideration necessary for an equitable assignment.

[¶46] We conclude HOA1 equitably assigned ownership of Lot 1 to HOA2. Given this assignment, HOA2 is the successor to HOA1. *See supra* ¶¶ 33–45. HOA2 has legal title to Lot 1 and is entitled to possession. *See* Wyo. Stat. Ann. § 1-32-202. Summary judgment on HOA2's claim for ejectment is affirmed.

## II.    Does W.R.C.P. 19 require the joinder of members of HOA1?

[¶47] In its motion for joinder, Prancing Antelope contended that members of HOA1 at the time it dissolved are parties that are required to be joined in this litigation. It is undisputed that some members of HOA1 are members of HOA2. Others sold their properties in the Subdivision after HOA1 was administratively dissolved and were never

members of HOA2. The district court concluded that members of HOA1 were not "persons required to be joined if feasible" as required by Rule 19(a). Prancing Antelope contends that the district court's conclusion was erroneous.

## A. Standard of Review

[¶48] "District court rulings on joinder are reviewed for an abuse of discretion." *Grove v. Pfister*, 2005 WY 51, ¶ 4, 110 P.3d 275, 277 (Wyo. 2005) (citing *Rivermeadows, Inc. v. Zwaanshoek Holding & Financiering, B.V.*, 761 P.2d 662, 668–70 (Wyo. 1988); *England v. Simmons*, 728 P.2d 1137, 1139–40 (Wyo. 1986)).

> [T]he core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Byerly v. Madsen*, 41 Wash. App. 495, 704 P.2d 1236, 1238 (Wash. App. 1985)); *Basolo v. Basolo*, 907 P.2d 348, 353 (Wyo. 1995). We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

*Grove*, ¶ 4, 110 P.3d at 277 (quoting *Woods v. Wells Fargo Bank Wyoming*, 2004 WY 61, ¶ 20, 90 P.3d 724, 731 (Wyo. 2004)).

## B. Analysis

[¶49] In concluding that members of HOA1 did not have to be joined as parties to this action, the district court reasoned:

> HOA #2 is the successor to HOA #1 and, as such, is entitled to, and subject to, the rights and duties set forth in the Covenants, Articles of Incorporation and Bylaws. These contractual documents state that Lot 1, is to be held by the HOA for the use of the members of the HOA and that membership in the HOA run appurtenant to the land and cannot be separated from the property. . . . [A] person who was a member of HOA #1 at the time of dissolution, and who no longer owns a lot in [the Subdivision] would by contract no longer have claims to Lot 1 or to be a member of the

15

HOA. Additionally, any person who owned a lot at the time of HOA #1['s] dissolution and still owns a lot in [the Subdivision] as currently represented in the present case by HOA #2. The Court finds that no former lot owners' presence is required to accord complete relief among the parties or would have an interest that would need to be protected. Therefore, no former lot owners are required to be joined to the current litigation.

[¶50] "A Rule 19 joinder analysis has three steps. First, the court must determine under Rule 19(a) whether the absent person *should* be joined." 1 Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary Rule 19 (2020). "Second, the court must assess whether that person *can* be joined. Third, if the person cannot be joined, Rule 19(b) guides the court on whether to continue without that person or dismiss the case in its entirety." *Id. See* W.R.C.P. 19. The focus here is on step one, whether members of HOA1 should be joined. Rule 19(a) governs the analysis.

[¶51] Rule 19(a) provides:

(a) *Persons Required to Be Joined if Feasible.* —
(1) *Required Party.* – A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

W.R.C.P. 19(a)(1).

[¶52] Prancing Antelope argues that members of HOA1 who sold their lots have "an interest relating to the subject of the action" and that "disposing of the action in [their] absence may" both impair their ability to protect their interest, W.R.C.P. 19(a)(1)(B)(i), and leave HOA2 at "risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." W.R.C.P. 19(a)(1)(B)(ii). Prancing Antelope's argument hinges on its contention that, upon dissolution, the Articles of Incorporation

16

required HOA1 to distribute its assets, including Lot 1, to its members. *See supra* ¶¶ 22–30.

### 1. Impairment of HOA1 Members' Abilities to Protect Their Interests, W.R.C.P. 19(a)(1)(B)(i)

[¶53] We first consider whether disposing of this action in the absence of members of HOA1 would impair or impede their ability to protect their interests under W.R.C.P. 19(a)(1)(B)(i). Prancing Antelope argues that "there is no question of the possibility that the ability to protect the Members' interests in distribution of the Lot 1 proceeds was impeded. The interests were not protected in any way, and they were lost." We are not persuaded.[6]

[¶54] HOA1 members are required to be joined if proceeding in their absence might, "as a practical matter[,] impair or impede" HOA1 members' "ability to protect [their] interest[s]." W.R.C.P. 19(a)(1)(B)(i). "Since the Wyoming Rules of Civil Procedure are patterned after their federal counterparts, we have found federal court interpretations of their rules highly persuasive for interpretations of our corresponding rules." *Grove*, ¶ 9, 110 P.3d at 279.

[¶55] The determination whether practical impairment is present often turns upon whether existing parties might adequately represent the interests of the missing persons.

> [T]he extent to which any of the existing parties might adequately represent the absent person's interests [is a factor that m]any courts will . . . consider . . . at the Rule 19(a) stage of the analysis when making the threshold determination of whether the absent person's interests would "as a practical matter" be impaired or impeded.

Gensler & Mulligan, *supra*.

[¶56] Courts following this approach have found that an absent person is not a required party under Rule 19(a)(1)(B)(i) if an existing party adequately represents the interest that would be impaired or impeded. For example, in *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, commercial trucking companies and their national trade association sued the New York State Thruway Authority alleging it charged excessive tolls. The Thruway Authority asserted that the case should be dismissed for failure to join the State

---

[6] "In theory, the defendant might invoke this provision out of concern for the absentee. As a practical matter, a defendant who invokes Rule 19(a)(1)(B)(i) is probably seeking dismissal of the case rather than joinder of the absent person." 1 Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary Rule 19 (2020).

of New York, a required party under Rule 19. The Second Circuit held that the Thruway Authority adequately represented the interests of the State and the State was not required to be joined:

> the Thruway Authority warns of the grave prejudice to be suffered by the State of New York if this case is litigated in its absence. . . . Whatever interest New York has in the outcome of this lawsuit, we are confident that Mr. Schneiderman [counsel for the Thruway Authority and the Attorney General of New York] will keep it in mind.

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 360 (2d Cir. 2015). *See also Pujol v. Shearson Am. Express, Inc.*, 877 F.2d 132, 135 (1st Cir. 1989) ("[W]e fail to see how proceeding without [the absent party] would 'as a practical matter impair or impede' the [absent party's] interests, interests that [the present party's] counsel can adequately protect."); *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 11 (1st Cir. 2013) ("[A]n absent party's interests cannot be harmed or impaired if they are identical to those of a present party. . . . We do not suggest that the test requires 'virtually identical' interests, only that such is the situation here."); *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (because the Navajo Nation's interests in the lawsuit were adequately represented by Navajo officials, the tribe was not a necessary party under Rule 19(a)(1)(B)(i)); *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 266–67 (6th Cir. 2009) (in school districts' and education associations' lawsuit against the United States Department of Education concerning receipt of federal funding under the No Child Left Behind Act, certain states, who were not parties, were not required to be joined under Rule 19 because "the States' interests, if they have any, are adequately represented by the existing parties").

[¶57] In *River Birch Assocs. v. City of Raleigh*, the trial court denied the homeowners' motion to intervene in a lawsuit brought by a developer against the city and their homeowners' association regarding the development of a common area. The homeowners appealed, and the North Carolina Supreme Court held "that the individuals, though proper parties, were not necessary, and therefore there was no error in this ruling." *River Birch Assocs. v. City of Raleigh*, 388 S.E.2d 538, 554–55 (N.C. 1990). The court reasoned that "the Homeowners Association adequately represented [any interests] the individual home owners did have. The Homeowners Association asserted every claim that the individuals sought to assert, and, as members of the Homeowners Association, many of the individual home owners testified at trial." *Id.*

[¶58] Similarly, here HOA1 members' ability to protect their interests is not impaired. Their interests align with those of Ms. Bloomquist and Mr. Shannon, who were also members of HOA1. Ms. Bloomquist and Mr. Shannon have vigorously advocated for an interpretation of the Articles of Incorporation requiring distribution of proceeds to HOA1

18

members on dissolution. "Where an existing party has 'vigorously addressed' the interests of absent parties, we have no need to protect a possible required party from a threat of serious injury." *Bacardi*, 719 F.3d at 11; *see Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 43–44 (1st Cir. 2009).

## 2. Existing Parties' Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations, W.R.C.P. 19(a)(1)(B)(ii)

[¶59] We next consider whether "disposing of the action" in HOA1 members' absence may put existing parties at "risk of incurring double, multiple, or otherwise inconsistent obligations." W.R.C.P. 19(a)(1)(B)(ii). Prancing Antelope argues that "[a]n HOA #1 Member might well choose to file suit against HOA #2 for the financial loss of being denied the distribution of the Lot 1 proceeds." Prancing Antelope does not explain how such a lawsuit could result in "double, multiple, or otherwise inconsistent obligations."

[¶60] Inconsistent obligations are not "the same as inconsistent adjudications or results." *Grove*, ¶ 9, 110 P.3d at 281 (citing *Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983); 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.03 (3d ed. 1997)). "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Grove*, ¶ 9, 110 P.3d at 281 (citing Moore et al., *supra* § 19.03). In contrast, inconsistent adjudications or results "occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Id.*

> Unlike a risk of inconsistent obligations, **a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to Fed.R.Civ.P. 19(a)**. *See Field* [*v. Volkswagenwerk AG*], 626 F.2d [293,] 301 [(3d Cir. 1980)]. Moreover, where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages. *See In Re Torcise*, 116 F.3d 860, 866 (11th Cir. 1997).

*Grove*, ¶ 9, 110 P.3d at 281–82 (emphasis added) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

[¶61] In *Grove*, multiple people suffered injury in a car crash. We considered whether Rule 19(a) required joinder of a non-party with a tort cause of action for injuries arising

19

out of the crash in a negligence action brought by other parties who were also in the crash. *Grove*, ¶ 8, 110 P.3d at 279. We concluded joinder was not required:

> [The plaintiff] and [the non-party] possess separate and distinct causes of action that are independent of one another. [The non-party's] absence from this litigation will not prevent complete relief from being accorded to Grove on her complaint. Likewise, disposition in [her] absence will not in any way impair or impede her ability to protect any claim she may have against [the defendant]. The only consequence of not joining [the non-party] is the possibility that [the defendant] may face inconsistent adjudications. Joinder is, however, appropriate under Rule 19 when a party faces inconsistent obligations. . . . The mere possibility of inconsistent adjudications is not sufficient of itself to render a party necessary under Rule 19. The fact is that [the plaintiff] and [the non-party] possess claims that are not dependent upon the other, and each could successfully advance their respective claims independently.

*Id.* ¶ 11, 110 P.3d at 282–83. The possibility of inconsistent results does not render HOA1 members required parties here.

[¶62] The district court did not abuse its discretion when it concluded that members of HOA1 are not required parties under W.R.C.P. 19.

### III. Did the district court abuse its discretion when it awarded attorneys' fees as damages?

[¶63] The district court awarded HOA2 $35,000 in punitive damages as legal fees. Prancing Antelope contends that the district court's punitive damages award is not supported by the facts.

### A. Standard of Review

[¶64] Decisions awarding attorneys' fees and punitive damages are reviewed for an abuse of discretion. *Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 29, 360 P.3d 1006, 1016 (Wyo. 2015) (attorney's fees); *Hatch v. Walton*, 2015 WY 19, ¶ 43, 343 P.3d 390, 399 (Wyo. 2015) (punitive damages).

> Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while

20

> omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained.

*Rosty v. Skaj*, 2012 WY 28, ¶¶ 33–34, 272 P.3d 947, 958 (Wyo. 2012) (quoting *Vargas Ltd. P'ship v. Four H Ranches Architectural Control Comm.*, 2009 WY 26, ¶ 10, 202 P.3d 1045, 1050 (Wyo. 2009)). We will not "overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Kidd v. Jacobson*, 2020 WY 64, ¶ 13, 463 P.3d 795, 798 (Wyo. 2020) (quoting *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 278–79 (Wyo. 2018)).

## B.    Analysis

[¶65] The general rule is that each party to a lawsuit is responsible for his or her own attorney's fees. *Positive Progressions*, ¶ 29, 360 P.3d at 1016; *Thorkildsen v. Belden*, 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012). However, attorneys' fees are recoverable when a contractual or statutory provision authorizes recovery, or as a form of punitive damages. *Positive Progressions*, ¶ 29, 360 P.3d at 1016; *Alexander v. Meduna*, 2002 WY 83, ¶ 49, 47 P.3d 206, 220–21 (Wyo. 2002); *Olds v. Hosford*, 354 P.2d 947, 950 (Wyo. 1960).

[¶66] "[P]unitive damages are not favored and are to be awarded 'only for conduct involving some element of outrage,' such as willful or wanton misconduct. Punitive damages are 'an implement of public policy' and are intended to punish the defendant with the purpose of deterring others from similar conduct in the future." *Rosty*, ¶ 34, 272 P.3d at 958 (quoting *Alexander*, ¶ 40, 47 P.3d at 218). "Outrageous conduct, malice, and willful and wanton misconduct are sufficient bases to warrant punitive damages." *Alexander*, ¶ 41, 47 P.3d at 218–19 (citing *Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 818 (Wyo. 1993)).

[¶67] It is a long-standing rule in Wyoming that "[p]unitive damages cannot be awarded when compensatory damages are not recoverable." *Alexander*, ¶ 40, 47 P.3d at 218; *Bear v. Volunteers of Am., Wyoming, Inc.*, 964 P.2d 1245, 1255 (Wyo. 1998); *Cates v. Barb*, 650 P.2d 1159, 1161 (Wyo. 1982). Compensatory damages are awarded to reimburse an individual for losses suffered as a result of another's failure to perform some duty. *Hollon v. McComb*, 636 P.2d 513, 516 (Wyo. 1981); *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 833 (Wyo. 1994). "They are designed to make the individual whole; that is, to place him in the condition he would have been in if the other party had adequately performed the duty owed." *Alexander*, ¶ 36, 47 P.3d at 217–18 (citing *Hollon*, 636 P.2d at 516). Equitable relief may be sufficient to support an award of punitive damages, even when monetary compensatory damages are not sought or

awarded. Richard C. Tinney, Annotation, *Sufficiency of Showing Actual Damages to Support Award of Punitive Damages—Modern Cases*, 40 A.L.R.4th 11, § 12[a], at 60 (1985). For example, in *Vill. of Peck v. Denison*, the Idaho Supreme Court affirmed a punitive damages award in an action in which the plaintiff obtained a decree quieting title to water rights. The court concluded that an award of injunctive relief, since it required proof of an invasion of some legally protected interest, would fulfill the same function as monetary damages:

> The absence of a showing of actual damages need not bar an award of punitive damages, for such a showing is not a talismanic necessity. The reason for such a requirement is that it first insures [sic] that some legally protected interest has been invaded. It prevents the assessment of punitive damages against one who may have caused damage without legal injury. There is no reason why an award of equitable relief may not fulfill this same function, for in either case it is necessary first to show an invasion of some legally protected interest.

*Vill. of Peck v. Denison*, 450 P.2d 310, 314–15 (Idaho 1969); *see also Medasys Acquisition Corp. v. SDMS, P.C.*, 55 P.3d 763, 767 (Ariz. 2002) ("Conduct so egregious as to warrant punitive damages if compensatory damages are awarded should similarly support an award of punitive damages if only rescissory damages are awarded.").

[¶68] In *Farmers Ins. Exch. v. Shirley*, we articulated factors to be considered in awarding legal fees as punitive damages. *Farmers Ins. Exch. v. Shirley*, 958 P.2d 1040, 1044 (Wyo. 1998) (listing and applying factors set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809 (1996) (quoting *Green Oil Co. v. Hornsby*, 539 So. 2d 218, 223–24 (Ala. 1989))); *see also Alexander*, ¶ 48, 47 P.3d at 220–21.

[¶69] The district court addressed the *Shirley* factors and made findings with regard to each: "(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred." *Shirley*, 958 P.2d at 1044.

> HOA2 was "required to bring suit" and . . . the "loss of Lot 1 affects all 56 lots within the Subdivision and the ability to market or resale the lots . . . previously created with river-side access."

[¶70] "(2) The degree of reprehensibility of the defendant's conduct should be considered." *Shirley*, 958 P.2d at 1044.

22

> Defendant Bloomquist clearly conveyed Lot 1 for self-serving purposes. She was looking to increase the value of the adjacent lot . . . and sell both lots for a profit. Defendant Bloomquist claimed that she intended to disburse the proceeds from any sale pro-rata to the original members of HOA #1, which would have been primarily her and Mr. Shannon, yet failed to document in writing any such intention.

[¶71]  "(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss." *Shirley*, 958 P.2d at 1044.

> [Ms. Bloomquist] values Lot 1 between $15,000 to $25,000 by itself.  Ms. Bloomquist testified she would accept an offer . . . price of Lot 1 for $30,000 alone, but combined with Lot 2, she valued the combined parcel at $120,000 to $140,000. Additionally, Mr. Shannon offered to sell Lots 1 and 2 for $94,000, reasserting that the title was clear.  Finally, Ms. Bloomquist testified that having waterfront property added 30% to its value because of the desirability of waterfront property.  Ms. Bloomquist reacquiring Lot 1 was purely financially motivated for her and Mr. Shannon's benefit.

[¶72]  "(4) The financial position of the defendant would be relevant." *Shirley*, 958 P.2d at 1044.

> [Ms.] Bloomquist claimed a personal net worth of $379,000, and Prancing Antelope has a net worth of approximately $245,000.

[¶73]  "(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial." *Shirley*, 958 P.2d at 1044.

> This litigation is over a small parcel of land on the Platte River in Saratoga, Wyoming.  By itself, the value of the property is minimal; however, the value of the additional 56 lots to have riverside access as a part of the ownership has great value.  The monetary value of the Lot 1 is minimal compared to the cost of litigation.  As such, similarly situated plaintiffs may be reluctant to bring suit to recover their

23

property. As such, a punitive award will discourage similar fraudulent behavior.

[¶74] "(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award." *Shirley*, 958 P.2d at 1044.

No criminal sanctions mitigate the matters covered by this Judgment.

[¶75] "(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award." *Shirley*, 958 P.2d at 1044.

None presented.

[¶76] The district court concluded, "a punitive damages award is appropriate. [Ms.] Bloomquist's conduct was willful and wanton, she was purposely deceitful in the transfer of Lot 1 for her own financial gain, and a punitive award will discourage future conduct of this nature." The district court's findings with respect to the *Shirley* factors are supported by the record. *See supra* ¶¶ 3–13. The district court did not abuse its discretion when it awarded attorneys' fees as punitive damages.

## *CONCLUSION*

[¶77] We affirm the district court's grant of summary judgment on HOA2's claim for ejectment. W.R.C.P. 19 does not require the joinder of members of HOA1. The district court did not abuse its discretion when it awarded punitive damages. Affirmed.